[819 NE2d 1029, 786 NYS2d 413]

ROGER MASON, Appellant, v CENTRAL SUFFOLK HOSPITAL et al., Respondents.

Argued October 12, 2004; decided November 18, 2004

**POINTS OF COUNSEL**

*Robert G. Spevack,* New York City, and *Michael P. Barnes* for appellant. I. The holdings of the Appellate Division departments have deprived physicians of any effective remedy for violations

and abuse of hospital bylaws. (*Tedeschi v Wagner Coll.*, 49 NY2d 652; *Chalasani v Neuman,* 97 AD2d 806, 64 NY2d 879; *Gianelli v St. Vincent's Hosp. & Med. Ctr.,* 160 AD2d 227; *Bogdan v Peekskill Community Hosp.,* 168 Misc 2d 856; *Chime v Sicuranza,* 221 AD2d 401; *Falk v Anesthesia Assoc. of Jamaica,* 228 AD2d 326; *Gelbard v Genesee Hosp.,* 255 AD2d 882; *Moallem v Jamaica Hosp.,* 264 AD2d 621.) II. The Public Health Law was never intended to eliminate a physician's cause of action for monetary damages and replace it with a statutory cause of action for injunctive relief only. (*Gianelli v St. Vincent's Hosp. & Med. Ctr.,* 160 AD2d 227; *Wasserman v Maimonides Med. Ctr.,* 268 AD2d 425; *Leider v Beth Israel Hosp. Assn.,* 11 NY2d 205; *Chalasani v Neuman,* 97 AD2d 806; *Tedeschi v Wagner Coll.,* 49 NY2d 652; *Gelbard v Genesee Hosp.,* 87 NY2d 691; *Tassy v Brunswick Hosp. Ctr., Inc.,* 296 F3d 65; *Falk v Anesthesia Assoc. of Jamaica,* 228 AD2d 326; *Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Weiner v McGraw-Hill, Inc.,* 57 NY2d 458.) III. Plaintiff has stated a cause of action pursuant to CPLR 3211 (a) (7). (*Matter of Katz,* 81 AD2d 145, 55 NY2d 904.) IV. Even under the Appellate Division's view of the law, plaintiff has stated a prima facie case. (*Chuz v St. Vincent's Hosp.,* 186 AD2d 450; *Chime v Sicuranza,* 221 AD2d 401; *Wasserman v Maimonides Med. Ctr.,* 268 AD2d 425.) V. Plaintiff has sufficiently pleaded a case against Dr. Jon Zelen based upon tortious interference with contractual relations. (*Foster v Churchill,* 87 NY2d 744.)

*Nixon Peabody LLP,* Garden City (*Michael S. Cohen, James Fabian* and *Christopher J. Porzio* of counsel), for respondents. I. This Court should not recognize a contractual cause of action for monetary damages arising out of an alleged violation of hospital or medical staff bylaws. (*Guibor v Manhattan Eye, Ear & Throat Hosp.,* 46 NY2d 736; *Gelbard v Genesee Hosp.,* 87 NY2d 691; *Moallem v Jamaica Hosp.,* 264 AD2d 621; *Gelbard v Genesee Hosp.,* 255 AD2d 882, 93 NY2d 916; *Dolgin v Mercy Hosp.,* 127 AD2d 557; *Leider v Beth Israel Hosp. Assn.,* 11 NY2d 205; *Yates v Cohoes Mem. Hosp.,* 64 AD2d 726; *Rockland Physician Assoc., P.C. v Grodin,* 616 F Supp 958; *Tedeschi v Wagner Coll.,* 49 NY2d 652; *Maas v Cornell Univ.,* 94 NY2d 87.) II. Even if this Court does recognize a cause of action for damages for breach of medical staff bylaws, it should do so consistent with current Appellate Division precedent and affirm the dismissal of Dr. Roger Mason's claim. (*Wasserman v Maimonides Med. Ctr.,* 268 AD2d 425; *Chuz v St. Vincent's Hosp.,* 186 AD2d 450; *Saha v Record,* 177 AD2d 763; *Farooq v Millard Fillmore*

*Hosp.,* 172 AD2d 1063; *Falk v Anesthesia Assoc. of Jamaica,* 228 AD2d 326, 89 NY2d 916; *Giordano v Victory Mem. Hosp.,* 273 AD2d 353; *Moallem v Jamaica Hosp.,* 264 AD2d 621; *Gelbard v Genesee Hosp.,* 255 AD2d 882, 93 NY2d 916; *Matter of Chong-Hwan Wee v City of Rome,* 233 AD2d 876; *Harris v Eisenberg,* 199 AD2d 305.) III. The proposed amended complaint fails to allege adequately any violation of the bylaws. (*Fried v Straussman,* 41 NY2d 376; *Maltz v New York Univ. Med. Ctr.,* 121 AD2d 323.) IV. Dr. Roger Mason has not adequately alleged any breach of contract induced by Dr. Jon Zelen, requiring an affirmance of the dismissal of the cause of action for tortious interference with contract. (*Foster v Churchill,* 87 NY2d 744; *Falk v Anesthesia Assoc. of Jamaica,* 228 AD2d 326, 89 NY2d 916; *Gelbard v Genesee Hosp.,* 255 AD2d 882.)

*O'Connell and Aronowitz,* Albany (*Jane Bello Burke* and *J. Alex Augustin* of counsel), for Healthcare Association of New York State, amicus curiae. I. A physician has no right, under common law or statute, to recover damages from a hospital for a denial of staff privileges. (*Gelbard v Genesee Hosp.,* 87 NY2d 691; *Matter of Cohoes Mem. Hosp. v Department of Health,* 48 NY2d 583; *Guibor v Manhattan Eye, Ear & Throat Hosp.,* 46 NY2d 736; *Fried v Straussman,* 41 NY2d 376; *Leider v Beth Israel Hosp. Assn.,* 11 NY2d 205; *Van Campen v Olean Gen. Hosp.,* 210 App Div 204, 239 NY 615; *Matter of Fritz v Huntington Hosp.,* 39 NY2d 339; *Moallem v Jamaica Hosp.,* 264 AD2d 621.) II. *Tedeschi v Wagner Coll.* (49 NY2d 652 [1980]) does not provide a basis to challenge a hospital staff privileges decision based upon a violation of the medical staff bylaws. (*Maas v Cornell Univ.,* 94 NY2d 87; *Matter of Amodei v New York State Chiropractic Assn.,* 77 NY2d 891; *Matter of De Petris v Union Settlement Assn.,* 86 NY2d 406; *Gertler v Goodgold,* 107 AD2d 481, 66 NY2d 946; *Chalasani v Neuman,* 97 AD2d 806, 64 NY2d 879; *Matter of Murphy v St. Agnes Hosp.,* 107 AD2d 685; *Bogdan v Peekskill Community Hosp.,* 168 Misc 2d 856; *Gianelli v St. Vincent's Hosp. & Med. Ctr.,* 160 AD2d 227; *Chime v Sicuranza,* 221 AD2d 401.) III. On public policy grounds, the decision should be affirmed. (*Sithian v Spence,* 283 AD2d 566.)

**OPINION OF THE COURT**

R.S. SMITH, J.

In *Gelbard v Genesee Hosp.* (87 NY2d 691, 698 [1996]), we left open the question "whether a breach of contract action can be predicated on a violation of medical staff bylaws." We now

answer that question in part, holding that no action for damages may be based on a violation of medical staff bylaws, unless clear language in the bylaws creates a right to that relief.

## Facts

Doctor Roger Mason was a member of the medical staff of Central Suffolk Hospital and a specialist in laparoscopic surgery (surgery performed by means of a narrow tube called a laparoscope inserted through the abdominal wall). On February 3, 1998, the Hospital suspended Dr. Mason's privileges to perform "advanced" laparoscopic procedures, and required him to obtain a concurring second opinion before performing certain other kinds of surgery. The Hospital based its decision on a review of Dr. Mason's cases by another doctor, who reported that in some of those cases Dr. Mason's skills and judgment appeared to be flawed, and that his failings may have caused patients to be injured.

Dr. Mason sought internal review of this decision pursuant to the Hospital's bylaws. Lengthy proceedings followed, with the net result that the Hospital found the initial suspension to be justified; discontinued the requirement for a second opinion, but required a period of monitoring of certain procedures; and provided for reinstatement of Dr. Mason's advanced laparoscopic surgery privileges on certain conditions. Dr. Mason then complained to the Public Health Council of the Department of Health, pursuant to Public Health Law § 2801-b. The Public Health Council rejected his complaint.

After the Public Health Council's ruling, Dr. Mason brought this action against the Hospital and Dr. Jon Zelen, a former employee of Dr. Mason's surgical practice group who had left before February 1998 to form a competing group. Dr. Mason alleged that Dr. Zelen had stood to gain from restrictions being placed on Dr. Mason's privileges, and that he had therefore made false accusations and stirred up an unwarranted investigation by the Hospital. Dr. Mason claimed that the Hospital's bylaws were a contract between him and the Hospital, and that the Hospital breached that contract by failing to follow the procedures the bylaws required and by suspending him "without legitimate cause." He sought damages from the Hospital for breach of contract, and from Dr. Zelen for inducing the breach.

Defendants' motion to dismiss the complaint for failure to state a cause of action was denied by Supreme Court. The Appellate Division reversed and ordered the complaint dismissed. We now affirm the Appellate Division's order.

## Discussion

A number of our cases reject claims by doctors complaining of the denial of hospital privileges. One of these was *Leider v Beth Israel Hosp. Assn.* (11 NY2d 205, 208 [1962]), in which we held "that the plaintiff, a surgeon, has no vested right to the use of the hospital's facilities for the care and treatment of his private patients." In *Guibor v Manhattan Eye, Ear & Throat Hosp., Inc.* (46 NY2d 736, 737 [1978]), we cited *Leider* for the broad proposition that "[a]t common law, absent a contractual obligation to the contrary, a physician's continued professional association with a private hospital was within the unfettered discretion of the hospital's administrators."

We noted in *Guibor* that "this seemingly harsh common-law rule" had been "tempered" by the enactment of Public Health Law § 2801-b. (*Id.*) The statute provides that it "shall be an improper practice" for a hospital's governing body to "curtail, terminate or diminish in any way a physician's . . . professional privileges in a hospital, without stating the reasons therefor, or if the reasons stated are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant" (§ 2801-b [1]). It also provides that any person "claiming to be aggrieved by an improper practice as defined in this section" can make a complaint to the Public Health Council, which, if it upholds the complaint, shall direct the hospital's governing body to review its actions (§ 2801-b [2], [3]); and that the statute's provisions "shall not be deemed to impair or affect any other right or remedy" (§ 2801-b [4]). Public Health Law § 2801-c provides that Supreme Court "may enjoin violations or threatened violations of any provisions of this article." In *Guibor*, we held that an action seeking an injunction under section 2801-c was premature where the doctor had not first presented his claim to the Public Health Council.

In *Gelbard v Genesee Hosp.* (87 NY2d 691 [1996]), a physician sought an order restoring his staff privileges, relying not on the Public Health Law, but on the hospital's bylaws. Dr. Gelbard claimed, as Dr. Mason does here, that the bylaws were a contract, and he sought an injunctive remedy for their breach. Without reaching the merits of Dr. Gelbard's claim we held that the lawsuit, as in *Guibor*, was premature; even where a doctor who is seeking reinstatement sues for breach of contract, his claim must first be presented to the Public Health Council, for otherwise the "statutory requirement of threshold [Public

Health Council] review" might be "circumvented by artful pleading" (*id.* at 697).

This case differs from *Gelbard* in two ways: Dr. Mason is not seeking reinstatement, but damages, and he has already presented his claim to the Public Health Council. No argument can be or is made that Dr. Mason's suit is premature, and therefore we must decide in this case, as we did not need to do in *Gelbard*, whether the claim is legally sufficient.

While we have never decided whether hospital bylaws constitute a contract for breach of which a doctor may sue, several Appellate Division decisions have dealt with that question, producing mixed and perhaps inconsistent results. Some cases decline to dismiss complaints alleging breach of medical staff bylaws, holding them legally sufficient as suits for injunctive relief (*e.g., Chalasani v Neuman*, 97 AD2d 806 [2d Dept 1983]) or damages (*Giannelli v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 160 AD2d 227 [1st Dept 1990]; *Chime v Sicuranza*, 221 AD2d 401 [2d Dept 1995]). Other decisions, however, appear to limit the effect of these holdings in damages actions by rejecting complaints for wrongful termination of staff privileges based on alleged bylaw violations (*Falk v Anesthesia Assoc. of Jamaica*, 228 AD2d 326 [1st Dept 1996]; *Gelbard v Genesee Hosp.*, 255 AD2d 882 [4th Dept 1998]). There appears to be no appellate case in which a damages award for breach of medical staff bylaws has been upheld after trial.

The decisions of our Court, and many of those of the Appellate Division, are consistent with an important, though generally unexpressed, policy consideration: It is preferable for hospital administrators who decide whether to grant or deny staff privileges to make those decisions free from the threat of a damages action against the hospital. It is not just in a hospital's interest, but in the public interest, that no doctor whose skill and judgment are substandard be allowed to treat or operate on patients. A decision by those in charge of a hospital to terminate the privileges of, or deny privileges to, a doctor who may be their colleague will often be difficult. It should not be made more difficult by the fear of subjecting the hospital to monetary liability.

This does not mean, of course, that the hospital may not expose itself to such liability if it chooses to do so. A clearly written contract, granting privileges to a doctor for a fixed period of time, and agreeing not to withdraw those privileges except for

specified cause, will be enforced. But the bylaws in this case are not such a contract.

Not a word in the bylaws that are now before us says or implies that doctors have a vested right to hospital privileges. The most relevant provisions of the bylaws are procedural, not substantive: They are contained in article V (Procedure for Appointment and Reappointment) and article VI (Hearing and Appeal Procedures). It is most unlikely that these bylaw provisions were intended by anyone to create a monetary claim in favor of a doctor for wrongful termination or suspension of privileges. Dr. Mason also relies on section 7.4 of the bylaws, which provides that no representative of the Hospital or staff shall be liable for action taken "in good faith and without malice" (subsection 7.4-1). Dr. Mason claims that the Hospital acted in bad faith and with malice, and that therefore he may sue. It is farfetched, however, to suggest that section 7.4, entitled "Immunity from Liability," was intended to create a liability where one would otherwise not exist.

Dr. Mason claims that a rule imposing liability for a breach of institutional bylaws can be traced to our decision in *Tedeschi v Wagner Coll.* (49 NY2d 652 [1980]), but *Tedeschi* actually supports the rejection of Dr. Mason's damages claim. We held in *Tedeschi* that the plaintiff, a college student, was entitled to a judgment directing the college that was seeking to suspend her to comply with its own written guidelines; but we also held that "[s]o much of the complaint as sought money damages . . . was properly dismissed . . ." (49 NY2d at 661-662). In *Maas v Cornell Univ.* (94 NY2d 87 [1999]), we distinguished *Tedeschi* in a case brought by a professor challenging a university's disciplinary action. We held that the professor could not sue for breach of contract based on the university's "failure to observe bylaws and procedures" (*id.* at 90). We see no reason why the bylaws of the Hospital here should be read to confer more rights on Dr. Mason than the institutional documents in *Tedeschi* and *Maas* did on the plaintiffs in those cases.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Order affirmed, with costs.