Robert C. EGAN, M.D., Appellant,

v.

ST. ANTHONY'S MEDICAL
CENTER, Respondent.

No. SC 88493.

Supreme Court of Missouri,
En Banc.

Feb. 5, 2008.

Alan G. Kimbrell, Ballwin, MO, for Appellant.

Neal F. Perryman, Jennifer E. Behm, St. Louis, MO, for Respondent.

David M. Harris, Andrew Walkup, St. Louis, Gerald M. Sill, Anne C. Curchin, Jefferson City, MO, for Amicus Curiae Missouri Hospital Association.

STEPHEN N. LIMBAUGH, JR., Judge.

In this case, the plaintiff-appellant, a surgeon whose privileges to practice at the defendant hospital were suspended, asks this Court to reexamine its holding in *Cowan v. Gibson*, 392 S.W.2d 307 (Mo.1965), that there may be no judicial review of the staffing decisions of private hospitals. Following that precedent, the circuit court dismissed plaintiff's petition for failure to state a claim. After opinion by the Court

of Appeals, Eastern District, this Court granted transfer. Mo. Const. art. V, sec. 10. Reversed and remanded.[1]

## BACKGROUND AND PROCEDURAL HISTORY

Robert Egan, a board-certified general and vascular surgeon, has practiced surgery in the state of Missouri for forty-two years. At the time he filed this lawsuit, he had been a member of the medical staff at St. Anthony's Medical Center, a private, not-for-profit hospital in St. Louis County, for twenty years, performing an average of 200 surgical procedures there each year. He also held staff privileges at several other hospitals in the St. Louis area. In June 2005, Dr. Egan received a letter notifying him that he was summarily suspended from practice at St. Anthony's. The letter explained that "[s]pecifically, summary suspension is necessitated by the report of Michael V. Oliveri, Ph.D., ABPP, who found 'mild, relatively nonspecific neurocognitive abnormality classified as suggestive of early abnormal decline.'" The letter further informed Dr. Egan that on June 13, 2005, he had "performed a right colectomy on an 81–year old female patient" against the advice of her gastroenterologist.

Article X, section 1E of the bylaws of the medical staff of St. Anthony's Medical Center provides that "[s]ummary suspension of privileges is a drastic action that is taken without the opportunity for a prior hearing [and that the] Medical Center must be able to justify summary action on the basis that life or health is imminently threatened." At Dr. Egan's request, and in accordance with the bylaws, a hearing was held before members of St. Anthony's medical staff at which sworn testimony and evidence were presented, including the testimony of Dr. Egan's own cognitive experts and other physicians. The hospital subsequently abandoned its claims that Dr. Egan suffered from "neurocognitive abnormality," and no findings were made as to his mental status. However, the hearing committee determined that Dr. Egan: (1) performed an unindicated colectomy; (2) failed to provide sufficient documentation as to the patient in the colectomy and another of his patients, and (3) "in [another] case . . . violated the law and/or principles of medical ethics." Based on these conclusions, the hearing committee recommended revocation of Dr. Egan's privileges to practice at St. Anthony's.

Dr. Egan then appealed the findings and recommendation to an appellate committee, which, as required under the bylaws, was comprised of three members of St. Anthony's board of directors and three physicians selected by Dr. Egan. The bylaws also required that the appellate committee's decision be based solely on the record from the evidentiary hearing. However, Dr. Egan alleges that the appellate committee heard new testimony regarding his professional competence from at least one of its members, Dr. Kirk Nelson, who testified that he, himself, was very critical of Dr. Egan, based on things he had heard at other hospitals and his own personal interactions with him. Specifically, Dr. Nelson testified that Dr. Egan's privileges had been suspended by other local hospitals and that Dr. Egan had received letters of reprimand from them. Dr. Nelson also stated that he had personally witnessed Dr. Egan give an excessive amount of epinephrine in an attempt to resuscitate an ICU patient. Further, he testified that, while working in the emergency department, Dr. Egan asked him whether he had performed a pelvic examination on a female patient who had

---

1. The Missouri Hospital Association filed a      brief as amicus curiae.

not reported pain in that region, a question that Dr. Nelson felt was inappropriate. Dr. Nelson concluded by stating that it was his wish that Dr. Egan no longer practice at St. Anthony's. At that point, another physician on the committee objected to the testimony of Dr. Nelson for the reason that it was prejudicial and forbidden by the bylaws. However, the committee chairman, a member of the board of directors, overruled the objection, stating that plaintiff "has mental deficiencies," although, as noted, the hospital had abandoned that claim after the first hearing.

The appellate committee then adopted the findings of the hearing committee over the dissent of the objecting physician and recommended to St. Anthony's board of directors that Dr. Egan's privileges be revoked. The directors, in turn, adopted the recommendation of the committee, revoked Dr. Egan's privileges, and, as required by law, reported the revocation to the Missouri Board of Healing Arts and the National Practitioners Data Bank. Each of these proceedings—summary suspension, evidentiary hearing, appeal and final board action—was governed by the hospital's bylaws.

Subsequently, Dr. Egan filed the underlying seven-count petition seeking mandatory injunctive relief reinstating his privileges pending a new hearing with proper notice and appellate procedures. At oral argument, however, Dr. Egan stipulated that he now seeks only a new hearing in accord with hospital bylaws and not immediate reinstatement of his privileges.

Appellate review of the trial court's dismissal for failing to state a cause of action is "solely a test of the adequacy of the plaintiff's petition." *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001). Thus, it is assumed that all averments in the petition are true and all "reasonable inferences therefrom" are to be liberally granted. *Id.*

## ANALYSIS

In *Cowan v. Gibson*, 392 S.W.2d 307, 309 (Mo.1965), this Court addressed as an issue of first impression whether a physician could sue a private hospital for revoking his staff privileges. The *Cowan* case has come to stand for the proposition that, under Missouri law, a private hospital's decisions regarding staff privileges are not subject to judicial oversight. *Id.* at 309. *See also Richardson v. St. John's Mercy Hosp.*, 674 S.W.2d 200, 201 (Mo. App.1984) (holding that the court had no jurisdiction to review the staffing decisions of a private hospital); *Zipper v. Health Midwest*, 978 S.W.2d 398, 415–17 (Mo.App. 1998) (holding that a physician was not entitled to contractual damages when a hospital breached its bylaws). In support of the *Cowan* opinion, this Court cited what was, at the time, the nationwide majority rule from a then-current version of *American Law Reports*, which stated in relevant part that "the exclusion of a physician or surgeon from practicing [in a private hospital] is a matter which rests in the discretion of the managing authorities." *Cowan*, 392 S.W.2d at 308 (quoting 24 A.L.R.2d 850, 852) (1952). This, reasoned the Court, weighed heavily against any judicial review.[2]

**2.** The opinion went on to hold that the doctor could nevertheless state a cause of action against other physicians on the hospital's medical staff who conspired to withdraw his privileges for their own financial gain. *Id.* at 309. This conspiracy, however, involved more "than the hospital's mere denial of the doctor's application for reinstatement to staff and hospital privileges." *Id.* The deliberate acts of the other physicians were required for the purpose of interfering with the excluded surgeon's business and livelihood, "all of which is outside the operation and government of the hospital." *Id.* Here, Dr. Egan

In the decades following *Cowan*, however, forty-six states and the District of Columbia have adopted a limited exception of one kind or another to the general rule of non-review of the staffing decisions of private hospitals.[3] In fact, A.L.R. now recognizes that cases "frequently assert[ ] that there is an exception to this general rule [of no judicial review] where the hospital fails to conform to its own bylaws or regulations." 28 A.L.R. 107, 152 (1995). Dr. Egan urges us to adopt this very exception, without which Missouri case law forms a minority with only Iowa, Oklahoma and South Carolina. *See Natale v. Sisters of Mercy*, 243 Iowa 582, 52 N.W.2d 701, 710 (Iowa 1952); *Medcalf v. Coleman*, 71 P.3d 53, 56 (Okla.Civ.App.2003); *Wood v. Hilton Head Hosp., Inc.*, 292 S.C. 403, 356 S.E.2d 841, 842 (1987).

can state no cause of action under *Cowan* and its progeny because his expulsion from the medical staff was a decision resting solely in the discretion of St. Anthony's board of directors.

**3.** *Clemons v. Fairview Med. Ctr. Inc.*, 449 So.2d 788 (Ala.1984); *Kiester v. Humana Hosp. Alaska, Inc.*, 843 P.2d 1219, 1222 (Alaska 1992); *Bock v. John C. Lincoln Hosp.*, 145 Ariz. 432, 702 P.2d 253 (Ariz.App.1985); *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006); *Miller v. Eisenhower Med. Ctr.*, 27 Cal.3d 614, 166 Cal.Rptr. 826, 614 P.2d 258 (1980); *Hawkins v. Kinsie*, 540 P.2d 345 (Colo.Ct.App.1975); *Gianetti v. Norwalk Hosp.*, 211 Conn. 51, 557 A.2d 1249 (1989); *Dworkin v. St. Francis Hosp., Inc.*, 517 A.2d 302, 306 (Del.Super.Ct.1986); *Lake Hosp. & Clinic, Inc. v. Silversmith*, 551 So.2d 538 (Fla. Dist.Ct.App.1989); *Satilla Health Servs., Inc. v. Bell*, 280 Ga.App. 123, 633 S.E.2d 575, 580 (2006); *Robles v. Humana Hosp. of Cartersville*, 785 F.Supp. 989, 1001 (N.D.Ga.1992); *Silver v. Castle Mem'l Hosp.*, 53 Haw. 475, 53 Haw. 563, 497 P.2d 564 (Haw.1972); *Miller v. St. Alphonsus Reg'l Med. Ctr., Inc.*, 139 Idaho 825, 87 P.3d 934, 943–44 (1994); *Adkins v. Sarah Bush Lincoln Health Ctr.*, 129 Ill.2d 497, 136 Ill.Dec. 47, 544 N.E.2d 733 (1989); *Pepple v. Parkview Mem'l Hosp., Inc.*, 536 N.E.2d 274, 276 (Ind.1989); *Dutta v. St. Francis Reg'l Med. Ctr., Inc.*, 254 Kan. 690, 867 P.2d 1057 (1994); *McElhinney v. William Booth Mem'l Hosp.*, 544 S.W.2d 216, 218 (Ky. 1976); *Smith v. Our Lady of the Lake Hosp., Inc.*, 639 So.2d 730, 756 (La.1994); *Bartley v. E. Maine Med. Ctr.*, 617 A.2d 1020 (1992); *Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 836 A.2d 655 (2003); *Saint Louis v. Baystate Med. Ctr., Inc.*, 30 Mass.App.Ct. 393, 568 N.E.2d 1181, 1187–88 (1991); *Feyz v. Mercy Mem'l Hosp.*, 475 Mich. 663, 719 N.W.2d 1 (2006); *Campbell v. St. Mary's Hosp.*, 312 Minn. 379, 252 N.W.2d 581 (1977); *Wong v. Garden Park Cmty. Hosp., Inc.*, 565 So.2d 550 (Miss.1990); *N. Valley Hosp., Inc. v. Kauffman*, 169 Mont. 70, 544 P.2d 1219, 1224 (1976); *Babcock v. Saint Francis Med. Ctr.*, 4 Neb.App. 362, 543 N.W.2d 749 (1996); *Clark v. Columbia/HCA Info. Servs., Inc.*, 117 Nev. 468, 25 P.3d 215 (2001); *Bricker v. Sceva Speare Mem'l Hosp.*, 111 N.H. 276, 281 A.2d 589 (1971); *Greisman v. Newcomb Hosp.*, 40 N.J. 389, 192 A.2d 817 (1963); *Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 780 P.2d 627 (1989); *Mason v. Cent. Suffolk Hosp.*, 3 N.Y.3d 343, 786 N.Y.S.2d 413, 819 N.E.2d 1029, 1031 (2004); *Lohrmann v. Iredell Mem'l Hosp., Inc.*, 174 N.C.App. 63, 620 S.E.2d 258, 262 (2005), *Van Valkenburg v. Paracelsus Healthcare Corp.*, 606 N.W.2d 908, 917–18 (N.D.2000); *Bouquett v. St. Elizabeth Corp.*, 43 Ohio St.3d 50, 538 N.E.2d 113 (1989); *Straube v. Emanuel Lutheran Charity Bd.*, 287 Or. 375, 600 P.2d 381, 386 (1979); *Lyons v. St. Vincent Health Ctr.*, 731 A.2d 206, 211 (Pa.Commw.Ct.1999); *Hagan v. Osteopathic Gen. Hosp.*, 102 R.I. 717, 232 A.2d 596, 600 (1967); *Mahan v. Avera St. Luke's*, 621 N.W.2d 150 (S.D.2001); *Lewisburg Cmty. Hosp. v. Alfredson*, 805 S.W.2d 756, 759 (Tenn.1991); *East Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55 (Tex.App.1998); *Brinton v. IHC Hosps., Inc.*, 973 P.2d 956 (Utah 1998); *Woodard v. Porter Hosp., Inc.*, 125 Vt. 419, 217 A.2d 37 (1966); *Med. Ctr. Hosps. v. Terzis*, 235 Va. 443, 367 S.E.2d 728, 730 (1988); *Rao v. Auburn Gen. Hosp.*, 19 Wash.App. 124, 573 P.2d 834 (1978); *Mahmoodian v. United Hosp. Ctr., Inc.*, 185 W.Va. 59, 404 S.E.2d 750, 755 (1991); *Seitzinger v. Cmty. Health Network*, 270 Wis.2d 1, 676 N.W.2d 426 (2004); *Garrison v. Bd. of Trs. of Mem'l Hosp. of Laramie County*, 795 P.2d 190, 193 (Wyo.1990); *Balkissoon v. Capitol Hill Hosp.*, 558 A.2d 304, 307 (D.C.1989).

What also has happened since *Cowan,* and what now requires a limited departure from it (more so than the shift in the weight of authority), is the implementation of a state regulation, 19 CSR 30–20.021(2)(C)1–5, promulgated in 1982 by the State Board of Health, which mandates that all Missouri hospitals adopt bylaws governing the professional activity of the medical staff. The relevant subsections are 1, 2, and 5, which provide:

> The medical staff shall be organized, shall develop and, with the approval of the governing body, shall adopt bylaws, rules and policies governing their professional activities in the hospital.... The bylaws of the medical staff shall include the procedure to be used in processing applications for medical staff membership and the criteria for granting initial or continuing medical staff appointments and for granting initial, renewed or revised clinical privileges. * * * A formal mechanism shall be established for recommending to the governing body delineation of privileges, curtailment, suspension or revocation of privileges and appointments and reappointments to the medical staff.... *Bylaws of the medical staff shall provide for hearing and appeal procedures for the denial of reappointment and for the denial, revocation, curtailment, suspension, revocation, or other modification of clinical privileges of a member of the medical staff.*

(emphasis added).

As with all rules and regulations duly promulgated by state administrative agencies, this regulation has the force and effect of a statute. *State ex rel. Martin–Erb v. Mo. Comm'n of Human Rights,* 77 S.W.3d 600, 607 (Mo. banc 2002). And as such, it is an expression of the public policy of this state. *Brawner v. Brawner,* 327 S.W.2d 808, 812 (Mo. banc 1959). Fur-

thermore, it is implicit under this regulation that hospitals not only have a legal duty to adopt bylaws, but also a corresponding duty to abide by those bylaws. On these points, the parties do not disagree.

The question, then, is whether, and to what extent, a member of a hospital medical staff who is directly and adversely affected by a hospital's failure to abide by its own bylaws may sue to enforce compliance with those bylaws. There is no enforcement mechanism in the regulation itself, but section 197.070, RSMo 2000, grants the Department of Health and Senior Services the right to "deny, suspend or revoke a license in any case in which it finds that there has been a substantial failure to comply with the requirements established under this law [the regulatory scheme for hospitals]." There is nothing in the statute or the regulation, however, either authorizing or prohibiting a private right of action like that brought here by Dr. Egan. To be sure, the general rule is that there is no private right of action to enforce a statute or regulation, *see, e.g., Dierkes v. Blue Cross and Blue Shield of Mo.,* 991 S.W.2d 662, 668 (Mo. banc 1999), but the cases in support of the rule involve actions for damages. Here, in contrast, Dr. Egan sued for injunctive relief, a less intrusive remedy, seeking only to compel the hospital to follow its own bylaws in the disciplinary proceeding against him. And although the hospital (and amicus) protests that as a matter of public policy, government regulations for hospital staffing decisions exist to protect patients, not doctors, the public policy behind the regulation here clearly protects both. As one court noted in interpreting a similar provision, "The statute ... attempts to balance the chilling effect of litigation on peer review with concerns for protecting physicians improperly subjected to disciplinary action...." *Bryan v. James E. Holmes Reg'l Med. Ctr.,* 33 F.3d

1318, 1322 (11th Cir.1994). Given the clear expression of public policy from the regulation, and consistent with the overwhelming weight of authority, this Court holds that Dr. Egan, as an aggrieved member of the medical staff, may bring an action in equity for injunctive relief to compel the hospital to substantially comply with its own bylaws before his privileges may be revoked. *See Robles,* 785 F.Supp. at 1001; *Bell,* 633 S.E.2d at 580; *Miller,* 87 P.3d at 943; *Feyz,* 719 N.W.2d at 10; *Wong,* 565 So.2d at 552.

That is not to say, however, that the bylaws create, or are themselves, an enforceable contract between doctors and hospitals, the breach of which gives rise to an action for damages. As the court of appeals correctly held in *Zipper,* 978 S.W.2d at 417, a hospital's duty to adopt and conform its actions to medical staff bylaws as required by the regulation is a preexisting duty, and a preexisting duty cannot furnish consideration for a contract. A hospital's obligation to act in accordance with its bylaws, in other words, is independent of any contractual obligation the hospital may have to the doctor.

Finally, and despite this Court's holding, it must be emphasized that the purpose of the regulation is to implement a system of medical staff peer review, rather than judicial oversight, and it is clear that final authority to make staffing decisions is securely vested in the hospital's governing body with advice from the medical staff. This is so because the notion underlying the internal governance structure required by the regulatory scheme is that medical professionals are best qualified to police themselves. 19 CSR 30–20.021(2)(C)12 ("The medical staff as a body or through committee shall review and evaluate the quality of clinical practice of the medical staff in the hospital in accordance with the medical staff's peer review function and

performance improvement plan and activities."). This Court, then, will not impose judicial review on the merits of a hospital's staffing decisions, but will act only to ensure substantial compliance with the hospital's bylaws. In this case, a cause of action in equity will lie for that purpose, but the matter of substantial compliance is a factual dispute that can only be determined on remand.

The judgment is reversed, and the case is remanded.

All concur.