

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| MICHAEL H. RALPH, M.D., | ) | No. ED102035 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | |
| ST. ANTHONY'S MEDICAL CENTER, | ) | Honorable Michael D. Burton |
| | ) | |
| Defendant/Respondent. | ) | Filed: September 22, 2015 |

### Introduction

Michael H. Ralph, M.D. (Dr. Ralph or Appellant) appeals from the trial court's Order and Judgment granting St. Anthony's Medical Center's (SAMC or Respondent) motion to dismiss Appellant's second amended petition bringing a claim for tortious interference with his business expectancies. We affirm.

### Factual and Procedural Background

Dr. Ralph is a licensed physician who had medical staff privileges as an orthopedic surgeon to operate upon patients at SAMC, a Missouri not-for-profit corporation, which operates as a hospital.

On August 23, 2013, Dr. Ralph received a letter from SAMC's Chief Executive Officer purporting to limit his clinical privileges and impose certain monitoring requirements. Dr. Ralph engaged in negotiations with SAMC to continue to perform surgeries at the hospital.

Dr. Ralph filed his original petition against SAMC on September 4, 2013. In his original petition, Dr. Ralph sought both damages and injunctive relief against SAMC in a three-count petition, including temporary and preliminary injunctive relief to require SAMC to comply with its medical staff bylaws, which he contended had been violated by SAMC in connection with restrictions, limitations, and reductions of his privileges.

On September 5, 2013, Dr. Ralph filed a motion in the trial court for a temporary restraining order (TRO) and set the motion for a hearing for the following day. The TRO hearing was then canceled, to be reset upon request.

After a dispute arose over the form of a non-standard informed consent for patients, SAMC summarily suspended Dr. Ralph on September 11, 2013. Dr. Ralph timely requested a hearing on the summary suspension of his medical staff privileges.

Also on September 11, 2013, Dr. Ralph filed a motion for leave to file an amended petition against SAMC and a verified motion for a TRO, and noticed the TRO hearing for the next day. On September 12, 2013, the trial court heard and denied Dr. Ralph's motion for TRO and/or preliminary injunction and set the preliminary injunction request for hearing on October 22, 2013. This hearing was continued to June 11, 2014.

In October and November 2013, a hearing was held under the Amended and Restated Bylaws of the Medical, Dental and Podiatric Staff of SAMC (Bylaws). On December 31, 2013, the Hearing Committee issued its Report and Recommendation revoking Dr. Ralph's medical staff privileges and clinical privileges. Dr. Ralph appealed from the Report and Recommendation of the Hearing Committee, and the Appellate Review Committee affirmed the decision. On February 28, 2014, SAMC's Board of

2

Directors issued its Notice of Final Decision in which Dr. Ralph's medical staff privileges and clinical privileges were revoked.

Dr. Ralph did not have privileges at any other medical center or hospital in which to perform surgeries on his patients. Dr. Ralph was also on staff at, and had an ownership interest in, an ambulatory surgery center the bylaws of which required its doctors to have staff privileges at a local hospital. Dr. Ralph maintains he could no longer continue his staff membership at or ownership interest in the ambulatory surgery center.

On April 10, 2014, Dr. Ralph moved for leave to file a Second Amended Petition, which was granted by the trial court. In his Section Amended Petition, Dr. Ralph presented a single count alleging tortious interference with his business expectancies and seeking monetary damages from SAMC predicated upon the allegedly wrongful revocation of his medical staff privileges at SAMC.

On April 29, 2014, SAMC moved to dismiss the Second Amended Petition for failure to state a claim upon which relief could be granted. On May 6, 2014, the motion was heard by trial court and taken under submission.

On August 7, 2014, the trial court issued its Order and Judgment dismissing Dr. Ralph's Second Amended Petition, finding Missouri law did not authorize a claim for damages by a physician against a private Missouri hospital regarding the hospital's medical staff decisions. This appeal follows.

Points Relied On

In his first point, Dr. Ralph argues the trial court erred in dismissing his cause of action for tortious interference with business expectancy because he alleged facts

3

essential to recovery and his petition was not inadequate, in that he properly pled all elements of this cause of action.

In his second point, Dr. Ralph argues the trial court erred in finding that a physician could not bring a cause of action against a hospital for damages, in that his lawsuit seeks relief for tortious interference with business expectancy.

In his third point, Dr. Ralph argues the trial court erred in finding that the cause of action for tortious interference with business expectancy related to a contractual obligation with SAMC because the business expectancy pled in the Second Amended Petition was of his continued orthopedic surgical practice and ownership interest in the ambulatory surgery center.

### Standard of Review

Appellate review of a circuit court's order to grant a motion to dismiss is *de novo*. Fenlon v. Union Elec. Co., 266 S.W.3d 852, 854 (Mo. App. E.D. 2008). A motion to dismiss for failure to state a claim only tests the adequacy of the plaintiff's petition. Id. All factual allegations contained in the petition are assumed to be true and this Court makes no attempt to weigh their credibility or persuasiveness. Id. It is not the function of either the trial court or this Court to determine on the merits whether the plaintiff is entitled to relief. Fenlon v. Union Elec. Co., 266 S.W.3d 852, 854 (Mo. App. E.D. 2008).

### Discussion

To state a claim for tortious interference with business expectancy, a plaintiff must plead and prove: 1) a valid business expectancy; 2) defendant's knowledge of the expectancy; 3) intentional interference by the defendant inducing or causing a breach of the expectancy; 4) absence of justification; and 5) damages. Misischia v. St. John's

4

Mercy Med. Ctr., 30 S.W.3d 848, 863 (Mo. App. E.D. 2000), abrogated on other grounds by Ellison v. Fry, 437 S.W.3d 762 (Mo. banc 2014).

At issue in this case is the adequacy of Dr. Ralph's Second Amended Petition. See Smith v. City of St. Louis, 409 S.W.3d 404, 417 (Mo. App. E.D. 2013) (once a pleading has been amended, all prior pleadings are considered abandoned unless they are incorporated into the amended pleading).

In Cowan v. Gibson, 392 S.W.2d 307, 308 (Mo. 1965), the Missouri Supreme Court first addressed the question of whether a physician could sue a private hospital for revoking the physician's staff privileges. The Cowan Court adopted the general rule that "the exclusion of a physician or surgeon from practicing [in a private hospital] is a matter which rests in the discretion of the [hospital's] managing authorities." Id. Cowan stands for the proposition that, under Missouri law, a private hospital's decisions regarding staff privileges are not subject to judicial oversight. Id. at 309; Egan v. St. Anthony's Med. Ctr., 244 S.W.3d 169, 171 (Mo. banc 2008) (Egan I). Cowan did carve out a narrow exception to the general rule, recognizing a cause of action in the case before it because the plaintiff alleged more than just the wrongful denial of staff privileges by the hospital, but also that two practicing physicians conspired with others for their financial advantage to exclude plaintiff from practicing medicine. Id. at 309.

Following Cowan, the general rule that the denial of a physician or surgeon from practicing in a private hospital is a matter which rests in the discretion of the hospital's managing authorities has been consistently applied. See Richardson v. St. John's Mercy Hosp., 674 S.W.2d 200, 201 (Mo. App. E.D. 1984) (framing the issue as a question of jurisdiction); and Misischia, 30 S.W.3d at 863, abrogated on other grounds by Ellison,

5

437 S.W.3d 762 (rejecting physician plaintiff's claim seeking monetary damages for tortious interference with his business relationship and expectancies based upon the general rule that a private hospital has the legal right to summarily suspend and ultimately terminate a physician's staff privileges, as such matters rest within the discretion of the hospital's managing authorities).

In Zipper v. Health Midwest, 978 S.W.2d 398, 415-17 (Mo. App. W.D. 1998), the court held that a hospital's bylaws do not constitute a contract between a hospital and the medical staff, and therefore a physician could not maintain a contract action for damages against a hospital based on the failure to abide by such. In support, the court reiterated that a grant of hospital privileges to a physician does not confer on the physician absolute authority to practice medicine at that hospital and that the hospital retains authority to restrict or revoke a staff member's privileges by reasonable and nondiscriminatory rules and regulations. Id. at 417. The court found that "[a] hospital's consideration, when terminating the privileges of a physician, of its potential liability for monetary damages could unduly impugn a hospital's actions in terminating the privileges of a physician providing substandard patient care." Id.

In Egan I, 244 S.W.3d at 171, the Missouri Supreme Court reexamined its holding in Cowan. The Court noted some changes in the law, in particular the implementation of a state regulation, 19 CSR 30–20.021(2)(C)1–5, promulgated in 1982 by the State Board of Health, mandating all Missouri hospitals to adopt bylaws governing the professional activity of the medical staff, including "hearing and appeal procedures for the denial of reappointment and for the denial, revocation, curtailment, suspension, revocation, or other modification of clinical privileges of a member of the medical staff." Id. at 173

6

(quoting 19 CSR 30–20.021(2)(C)(5)). The Court concluded "it is implicit under this regulation that hospitals not only have a legal duty to adopt bylaws, but also a corresponding duty to abide by those bylaws." Id. Distinguishing actions brought for damages, the Court established a limited exception to the rule of non-review, holding an aggrieved member of a medical staff may bring an action in equity for injunctive relief to compel the hospital to substantially comply with its own bylaws before his privileges may be revoked. Id. at 174. The Court "emphasized that the purpose of the [state] regulation is to implement a system of medical staff peer review, rather than judicial oversight, and it is clear that final authority to make staffing decisions is securely vested in the hospital's governing body with advice from the medical staff." Id. The Court stated it "will not impose judicial review on the merits of a hospital's staffing decisions, but will act only to ensure substantial compliance with the hospital's bylaws." Id.

After Egan I, Dr. Egan's case was remanded to the trial court to determine whether the hospital had substantially complied with the medical staff bylaws. Egan v. St. Anthony's Med. Ctr., 291 S.W.3d 751, 757 (Mo. App. E.D. 2009) (Egan II). On remand, the trial court denied Dr. Egan's requested injunctive relief, finding substantial compliance by the hospital. Id. On appeal, this Court defined the standard for "substantial compliance," looking to Egan I for guidance. Id. at 758-760. We reiterated that Egan I created a limited departure from the rule of non-review, which did "not impose judicial review of the merits of a hospital's staffing decisions." Id. at 760. The Egan II court held "if a hospital substantially complies with its bylaws, the adversely affected medical staff member is not entitled to equitable relief and a reviewing court may not reweigh the evidence or interfere with the hospital's decision on the merits." Id.

7

On appeal, Dr. Ralph asserts he is not seeking review of SAMC's decision regarding his medical staffing privileges, but rather is seeking relief from SAMC's tortious interference with his business relationships with his patients and his ambulatory surgery center. Dr. Ralph's petition, however, belies his argument on appeal. In his Second Amended Petition, Dr. Ralph alleged various violations by SAMC of its own bylaws in suspending and revoking his staff privileges. Dr. Ralph also alleged as follows:

> (1) he had a reasonable belief and expectation that he would continue to have staff privileges at SAMC to schedule and perform surgeries upon his patients at SAMC;
> (2) his staff membership and clinical privileges at SAMC were revoked;
> (3) he has been unable to perform surgeries on patients which were, or would have been, scheduled at SAMC;
> (4) since his privileges were suspended, surgeries which were scheduled prior to the suspension were adversely impacted or cancelled;
> (5) SAMC knew or should have known of his active orthopedic surgical practice which necessarily included the scheduling of surgeries at SAMC;
> (6) SAMC knew, or should have known, he was required to maintain staff privileges at a local hospital in order to continue his staff membership or ownership interest for the ambulatory surgery center;
> (7) SAMC intentionally interfered with his reasonable expectations by attempting to prohibit him from performing said surgeries, interfering with his practice of medicine, and ending his staff membership and ownership interest in the ambulatory surgery center;
> (8) SAMC's intentional and unreasonable interference has injured him financially; and
> (9) SAMC lacked justification in revoking his staff membership and clinical privileges, and interfering with his practice of medicine.

Contrary to Dr. Ralph's assertions otherwise, the only reasonable interpretation of the allegations in his Second Amended Petition is that his claim of tortious interference of business expectancy against SAMC is premised upon Dr. Ralph's loss of business as a result of SAMC's alleged wrongful suspension and revocation of his staff privileges.

8

Prevailing under this theory would require "judicial review of the merits of a hospital's staffing decisions," which is strictly prohibited. Egan I, 244 S.W.3d at 174. This Court has previously rejected similar claims for damages for tortious interference with business relationship and expectancy resulting from a private hospital's summary suspension and termination of a physician's staff privileges. See Misischia, 30 S.W.3d at 863. Missouri law is clear − Dr. Ralph may only bring an action in equity for injunctive relief to compel SAMC to substantially comply with its bylaws and may not maintain an action for damages premised upon such alleged failure. Id. at 174. The trial court did not err in granting SAMC's motion to dismiss Dr. Ralph's Second Amended Petition bringing a claim for damages for tortious interference with his business expectancy.

Based on the foregoing, Dr. Ralph's Points I, II, and III are denied.

Conclusion

The trial court's judgment granting SAMC's motion to dismiss is affirmed.

_____
Sherri B. Sullivan, P.J.

Patricia L. Cohen, J., and
Kurt S. Odenwald, J., concur.

9