No. 16-0834 – *Camden-Clark Memorial Hospital Corporation v. Tuan Nguyen, M.D.*

LOUGHRY, Chief Justice, dissenting:

**FILED**

**November 13, 2017**

released at 3:00 p.m.

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

With just a few strokes of the keyboard, the majority carelessly gutted a long-standing and well-established holding of this Court that gave hospitals a wide berth in granting or denying privileges or staff appointments. Nearly twenty-seven years ago, this Court ruled without equivocation:

> The decision of a private hospital to revoke, suspend, restrict or to refuse to renew the staff appointment or clinical privileges of a medical staff member is subject to *limited* judicial review to ensure that there was substantial compliance with the hospital's medical staff bylaws governing such a decision, as well as to ensure that the medical staff bylaws afford basic notice and fair hearing procedures, including an impartial tribunal.

Syl. Pt. 1, *Mahmoodian v. United Hosp. Ctr., Inc.*, 185 W.Va. 59, 404 S.E.2d 750 (1991) (emphasis added). Based on scant allegations of patient safety (which are little more than a belated counteroffensive to a suit initiated by the hospital), the majority has seemingly eviscerated that holding. *See* W. Va. Code § 16-39-1 to -7 (2016) (Patient Safety Act of 2001). The majority reasons its way through the weighty issues of this case with the delicacy of a charging rhinoceros, failing to clarify what vestiges remain of this well-ensconced quasi-immunity or to consider that this unwelcome intrusion into hospital staffing issues may actually jeopardize patient safety. Accordingly, I dissent.

1

The facts in this matter are straightforward and largely undisputed. The medical staff bylaws of Camden-Clark Memorial Hospital Corporation ("Hospital") require that physicians appointed to its staff be board certified in their area of practice within five years of completing their residency training. It is undisputed that the respondent ("Dr. Nguyen"), who was initially appointed to the Hospital's staff in 2008 a few months after he completed his residency, was not board certified when he applied for re-appointment in 2013. That Dr. Nguyen fully understood the significance of this lack of certification is clear from his letter to the Hospital, dated October 22, 2013, in which he admitted, when requesting temporary privileges: "I take full responsibility for not having obtained my board certification." Given this acknowledged failure and consistent with its by-laws, the Hospital refused to renew his staff appointment by letter dated October 17, 2013.[1] Notably, Dr. Nguyen's *employment* contract with Camden-Clark Physicians Corporation therefore *terminated automatically* under its own terms when his privileges terminated at the Hospital on November 30, 2013.

Of no small moment is the fact that the denial of re-appointment and resultant contractual termination yielded no action whatsoever on Dr. Nguyen's part: he

[1] By letter dated October 17, 2013, the Hospital acknowledged receipt of Dr. Nguyen's re-appointment application and informed him:

> In accordance with the Medical Staff Bylaws and Credentialing Policy, you are not eligible to apply for re-appointment to the Medical Staff of Camden Clark Medical Center due to your failure to obtain Board certification in your primary area of practice at the Hospital.

neither appealed the decision nor initiated a civil action to assert a claim of retaliation. Only when the Hospital filed suit against him seeking reimbursement for his tail coverage premiums did he raise a claim of retaliation or otherwise take issue with the Hospital's staffing decision. While the dubious circumstances under which Dr. Nguyen finally raised his claims of retaliation are scarcely dispositive of the issue, they demonstrate the ease with which an aggrieved physician may circumvent the *Mahmoodian* ruling.

More than fifty years ago, this Court recognized that "[t]he governing authorities of a private hospital, in the exercise of their discretion, have the *absolute* right to exclude licensed physicians from its medical staff and such action is not subject to judicial review." Syl. Pt. 3, *State ex rel. Sams v. Ohio Valley Gen. Hosp. Ass'n*, 149 W.Va. 229, 140 S.E.2d 457 (1965) (emphasis added); *see Hurwitz v. AHS Hosp. Corp.*, 103 A.3d 285, 301 (N.J. Super. Ct. App. Div. 2014) ("The judicial power to intervene in disputes over a physician's clinical privileges is circumscribed."). Thirty years later, in *Mahomoodian*, this Court again recognized that judicial interference in medical staffing decisions must be limited, explaining that

> [t]he judicial reluctance to review the medical staffing decisions of private hospitals, by way of injunction, declaratory judgment or otherwise, reflects the general unwillingness of courts to substitute their judgment on the merits for the professional judgment of medical and hospital officials with superior qualifications to make such decisions.

185 W.Va. at 65, 404 S.E.2d at 756; *see also Brinton v. IHC Hosps., Inc.*, 973 P.2d 956, 964 (Utah 1998) ("[H]ospitals are entitled to exercise good faith medical judgment,

3

which courts should not lightly question in subsequent civil suits . . . [Accordingly,] we give deference to a hospital's decision to decide whether medical standards of practice have been met."). This essentially "hands off" approach to hospital staffing decisions is widely-held and well-established. [2]

---

[2] In *Mahmoodian*, we cited the following cases to illustrate that a majority of courts limit judicial review of a private hospital's staffing decisions to a determination of whether there was compliance with the hospital's bylaws:

> *Shulman v. Washington Hosp. Ctr.*, 222 F.Supp. 59, 63, 64 (D.D.C.1963)*; Eidelson v. Archer*, 645 P.2d 171, 175 n. 13 (Alaska 1982) (citing cases from other jurisdictions); *Gaenslen v. Bd. of Dirs.*, 185 Cal.App.3d 563, 568, 232 Cal.Rptr. 239, 241-42 (1985); *Gianetti v. Norwalk Hosp.*, 211 Conn. 51, 61-67, 557 A.2d 1249, 1254-56 (1989) (citing cases from other jurisdictions); *Adkins v. Sarah Bush Lincoln Health Ctr.*, 129 Ill.2d 497, 506-07, 509-10, 514, 136 Ill.Dec. 47, 51-52, 53, 55, 544 N.E.2d 733, 737-38, 739, 741 (1989)*; Pepple v. Parkview Mem'l Hosp., Inc.*, 536 N.E.2d 274, 276 (Ind.1989); *Porter Mem'l Hosp. v. Malak*, 484 N.E.2d 54, 61 (Ind.Ct.App.1985); *State ex rel. Willman v. St. Joseph Hosp.*, 684 S.W.2d 408, 411, 412 (Mo.Ct.App.1984), *application to transfer denied* (Mo. Feb. 26, 1985); syl. pt. 2, *Gotsis v. Lorain Cmty. Hosp.*, 46 Ohio App.2d 8, 345 N.E.2d 641 (1974) (citing, in body of opinion, cases from other jurisdictions); *Miller v. Indiana Hosp.*, 277 Pa.Super. 370, 374-78, 380, 419 A.2d 1191, 1193-94, [185 W.Va. 65] 1196 (1980), *appeal denied* (Pa. Oct. 1, 1980).

*Mahmoodian*, 185 W.Va. at 64-65, 404 S.E.2d at 755-56 (footnote omitted). More recently, the Supreme Court of Missouri has observed that forty-six states adhere to the rule that the staffing decisions of private hospitals are subject to limited judicial review which is restricted to whether the hospital's decision conformed to its own bylaws or regulations. *See Egan v. St. Anthony's Med. Ctr.*, 244 S.W.2d 169, 172 (Mo. 2008).

With little to no consideration of the critical need for hospitals to retain this deferential autonomy regarding privileges and staffing, the majority has carelessly paved a path for litigants, and the judiciary, to invade the decision-making process previously reserved to those with expertise in matters of medical staffing and privileges. By simply phrasing a challenge to a staff appointment as "retaliatory" or "discriminatory," a physician may now evade the construct established in *Mahmoodian* of limited judicial review. To illustrate, as in this case, a physician denied re-appointment need only articulate a suggestion rooted in patient safety or a health care-related complaint and then allege that the privileges denial violates the Patient Safety Act of 2001. The ease with which a physician can conjure such assertions, and thereby effectively circumvent the limited review of staffing decisions, is troubling. Yet the majority, in its analysis, wholly fails to address the need to strike a balance between purported policy concerns of patient safety and this type of potential gamesmanship.

These considerations aside, the majority's errant holding also fails to acknowledge that the existing judicial review available under *Mahmoodian* is more than sufficient to guard against retaliation or discrimination. While maintaining that judicial review of a hospital's staffing decisions must be narrow in scope, this Court recognized the appropriate framework in which to address improperly-motivated staff decisions. In *Mahmoodian*, the Court held that "there are basic, common-law procedural protections which must be accorded a medical staff member by a private hospital in a disciplinary proceeding." 185 W.Va. at 65, 404 S.E.2d at 756. More to the point, the Court held that

"[t]he decision of a private hospital revoking or otherwise affecting adversely the staff appointment or clinical privileges of a medical staff member will be sustained when, as an element of fair hearing procedures, *there is substantial evidence supporting that decision.*"  *Id.* at 61, 404 S.E.2d at 752, syl. pt. 4 (emphasis added).  Because principles of fundamental fairness require "substantial evidence" in support of a hospital's staffing decision, a judicial avenue already exists for an aggrieved physician to demonstrate bias or discrimination without opening up the decision-making process to the "scorched earth" processes of civil litigation.  *See Hurwitz*, 103 A.3d at 306 (finding that permitting discovery to proceed in privileges cases "would needlessly entangle hospitals and review participants in depositions and other litigation activities, thereby diluting the practical benefit of the immunity protection conferred upon them[.]").

In short, the majority needlessly obliterates the *Mahmoodian* immunity in the interest of avenging retaliation or discrimination.  Where improper motivations exist, the framework of *Mahmoodian* currently permits the unearthing of this type of prohibited conduct.  *Cf. Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 386 (3d Cir. 1999) (requiring challenging physician to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in proffered reason for privileges suspension);  *Kiracofe v. Reid Mem'l Hosp.*, 461 N.E.2d 1134, 1140-41 (Ind. Ct. App. 1984) ("The decision of a hospital concerning staff privileges is accorded great deference and judicial intervention is limited to an assessment of whether the procedures employed

6

by the hospital are fair, whether the standards set by the hospital are reasonable, and whether they have been applied without arbitrariness and capriciousness."); *Hurwitz*, 103 A.3d at 296 (rejecting physician's challenge to clinical privilege denial where physician provided "no evidence, nor even a plausible indication, that defendants failed to comport with [] norms of fairness and reasonableness"). In this case, the undisputed facts amply demonstrate the existence of "substantial evidence" supporting the Hospital's decision; the hospital by-laws mandate attainment of board certification within five years of employment—a requirement that Dr. Nguyen admits he failed to obtain.

Unlike this Court, when faced with similar attempts to camouflage staff appointment challenges with a litany of tort claims, other courts have wisely rejected such transparent maneuvers. "Prevailing under [a tort] theory would require judicial review of the merits of a hospital's staffing decisions which is strictly prohibited." *Ralph v. St. Anthony's Med. Ctr.*, 470 S.W.3d 783, 787 (2015) (internal quotations and citation omitted); s*ee also Pamintuan*, 192 F.3d 378 (upholding dismissal of state law discrimination claims in view of immunity); *Bender v. Suburban Hosp., Inc.*, 758 A.2d 1090 (Md. Ct. Spec. App. 2000) (requiring hospital's decision to be supported by only objective reasonableness despite claims of sex discrimination); *Brinton*, 973 P.2d 956 (maintaining limited and deferential judicial review while addressing physician's claims of bias).

7

The majority casually disregards *Mahmoodian* with a talismanic reference to "public policy" without citing so much as a single case where a court has extinguished a hospital's immunity for privileges or staff appointments simply because the physician alleged a common law or statutory retaliation or discrimination claim. In fact, the *Fahlen* case cited by the majority *expressly* refused to resolve that precise issue: "The substantive effect of [the immunity provided by the] H[ealth] C[are] Q[uality] I[mprovement] A[ct] on section 1278.5's whistleblower protection for hospital staff physicians was not raised below, was not included in defendants' petition for review, and is beyond the scope of the issue on which we granted review." *Fahlen v. Sutter Cent. Valley Hosps.*, 318 P.3d 833, 852 (Cal. 2014).

To be clear, I wholeheartedly support the patient safety goals which the Patient Safety Act of 2001 is designed to foster. Without question, the safety of patients and quality of care rendered by health care professionals is of critical importance to the citizens of this state. In fact, it is the paramount importance of those goals that compels this dissent. In reaching its conclusion, the majority implicitly finds that the immunity provided to hospitals for privileges and staff appointments is *at odds* with those goals and must therefore give way. As expressly recognized by the majority of states having such immunity, limited judicial review of such decisions exists such as to "vest[] [hospitals] with wide managerial discretion, to be used *to elevate hospital standards and to better medical care*." *Hurwitz*, 103 A.3d at 296 (emphasis added). As such, both the Patient Safety Act and *Mahmoodian* share a common, critically important goal: patient safety

8

and quality assurance. By blithely dismissing the latter in favor of the former under the dubious facts of this case and without fully considering the effect such holding may have on these goals, the majority has seriously jeopardized patient safety. Sadly, the majority does so for the negligible purpose of allowing a lone physician, who indisputably failed to comply with the hospital by-laws, to leverage the hospital with a separation-induced financial dispute. Accordingly, I respectfully dissent.