STATE OF MINNESOTA

IN SUPREME COURT

A12-2117

Court of Appeals                                                                                          Page, J.
                                                          Dissenting, Anderson, J., and Gildea, C.J.

Medical Staff of Avera Marshall Regional
Medical Center on its Own behalf and in its
Representative Capacity for its Members, et al.,

                    Appellants,

vs.                                                                              Filed:  December 31, 2014
                                                                                 Office of Appellate Courts

Avera Marshall d/b/a Avera Marshall
Regional Medical Center, et al.,

                    Respondents.

_____

Kathy S. Kimmel, Margo S. Struthers, Oppenheimer Wolff & Donnelly, LLP, Minneapolis, Minnesota, for appellants.

David R. Crosby, Bryant D. Tchida, Stinson Leonard Street LLP, Minneapolis, Minnesota, for respondents.

Sam Hanson, Daniel J. Supalla, Briggs and Morgan, P.A., Minneapolis, Minnesota, for amici curiae American Medical Association, American Osteopathic Association, American Academy of Family Physicians, Minnesota Academy of Family Physicians, and the Minnesota Chapter of the American Academy of Pediatrics.

David F. Herr, Michael C. McCarthy, Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota, for amici curiae Minnesota Hospital Association and American Hospital Association.

_____

1

S Y L L A B U S

1.      A medical staff that meets the criteria of Minn. Stat. § 540.157 (2012) has the capacity to sue and be sued.

2.      Medical staff bylaws may be an enforceable contract between members of the medical staff and a hospital.

Reversed and remanded.

O P I N I O N

PAGE, Justice.

In 2012, the governing board of respondent Avera Marshall Regional Medical Center, a nonprofit hospital in Marshall, Minnesota, announced a plan to repeal the hospital's medical staff bylaws and replace them with revised bylaws. Avera Marshall's Medical Staff, its Chief of Staff, and Chief of Staff-elect eventually commenced an action seeking, as relevant here, a declaration that the Medical Staff has standing to sue Avera Marshall and that the medical staff bylaws are an enforceable contract between Avera Marshall and the Medical Staff. The district court entered judgment for Avera Marshall and dismissed the case after concluding both that the Medical Staff lacked the capacity to sue Avera Marshall and that the medical staff bylaws do not constitute an enforceable contract between Avera Marshall and the Medical Staff. The court of appeals affirmed the district court. For the reasons discussed below, we reverse the court of appeals and remand to the district court for further proceedings.

2

Avera Marshall is owned and operated by Avera Health and is incorporated under the Minnesota Nonprofit Corporation Act, Minn. Stat. ch. 317A (2012). Under Avera Marshall's articles of incorporation and corporate bylaws, Avera Marshall's board of directors (the board) is vested with the general responsibility for management of Avera Marshall. The corporate bylaws require the board to "organize the physicians and appropriate other persons granted practice privileges in the hospital . . . into a medical-dental staff under medical-dental staff bylaws approved by the [board]."

Appellants include two individual physicians and Avera Marshall's Medical Staff. The medical staff is composed of practitioners, primarily physicians with admitting and clinical privileges to care for patients at the hospital. The Medical Staff is subject to medical staff bylaws originally enacted by the board in 1995. When this case commenced, appellant Dr. Steven Meister was the Chief of Staff of the Medical Staff and appellant Dr. Jane Willett was the Medical Staff's Chief of Staff-elect. Dr. Meister was the chair of the Medical Executive Committee (the MEC), a medical staff committee that acts on the Medical Staff's behalf, and Dr. Willett was a member of the MEC.

Before May 1, 2012, the medical staff bylaws provided that, in order to admit patients, a practitioner was required to be a member of the medical staff. To serve on the medical staff, a physician was required to agree to be bound by the medical staff bylaws. One of the "enumerated purposes" for the medical staff set out in the bylaws was "[t]o initiate and maintain rules, regulations and policies for the internal governance of the Medical Staff." Another enumerated purpose was "[t]o provide a means whereby issues concerning the Medical Staff and the Medical Center [could] be directly discussed by the

3

Medical Staff with the Board of Directors and the Administration, with the understanding that the Medical Staff [was] subject to the ultimate authority of the Board of Directors."

The bylaws also gave the Medical Staff authority, "[s]ubject to the authority and approval of [the board]," to "exercise such power as is reasonably necessary to discharge its responsibilities under these bylaws and under the corporate bylaws of the Medical Center." The Medical Staff was also afforded "prerogatives," such as attending and voting on matters presented at medical staff and committee meetings and holding medical staff office. The bylaws described these prerogatives as "general in nature" and possibly "subject to limitations by special conditions . . . , by other sections of these Medical Staff Bylaws and by the Medical Staff Rules and Regulations, subject to approval by [the board]."

Under the bylaws, the Chief of Staff, the MEC, the board, or one-third of active medical staff members could propose amendments to or repeal of medical staff bylaws. The bylaws further provided for review of proposed amendments to the bylaws, either by the MEC itself or by special committee. Section 17.2 of the bylaws specifically provided that, "for the purposes of enacting a bylaws change, the change shall require an affirmative vote of . . . two-thirds of the Members eligible to vote." Bylaws changes recommended by the Medical Staff would not become effective until approved by the board. The bylaws were silent with respect to bylaws changes proposed by the board but not recommended for approval by the Medical Staff. However, the amendment and repeal process was "subject to approval by a majority vote of [the board]" and could not

4

"supersede the general authority of [the board] as set forth in its corporate bylaws or applicable common law or statutes."

In January 2012, the board notified the Medical Staff that the board had approved the repeal of the medical staff bylaws and that a set of revised medical staff bylaws had been approved. The notice solicited the Medical Staff's input but explained that the revised bylaws would take effect on April 1, 2012. At a medical staff meeting on January 24, 2012, Avera Marshall's CEO and President announced that, while individual members of the Medical Staff could comment on the changes, the board would not accept comments from the Medical Staff as an organized body, and the proposed changes would not be submitted to the Medical Staff for a vote.

After review, the MEC concluded that the proposed revisions to the bylaws restricted the rights of the Medical Staff, the functioning of medical-staff committees, and the Medical Staff's ability to ensure the quality of patient care. On that basis, MEC recommended that the board reject the changes. Notwithstanding the board's decision that the repeal and revision of the bylaws would not be submitted to the Medical Staff for a vote, on March 20, 2012, relying on section 17.2 of the former bylaws, the Medical Staff voted on the proposed changes and rejected both the repeal of the former bylaws and the enactment of the revised bylaws. Ultimately, the revised bylaws took effect on May 1, 2012.

Appellants filed a nine-count action against Avera Marshall, seeking a declaration that, as relevant here, the Medical Staff had standing and the capacity to sue Avera Marshall and that the former medical staff bylaws constituted a contract between Avera

5

Marshall and the Medical Staff. Appellants also sought to enjoin Avera Marshall from repealing the former bylaws and enforcing the revised bylaws. Avera Marshall moved to dismiss the action on the basis that the Medical Staff lacked standing and the capacity to sue. The district court converted Avera Marshall's motion to dismiss into a motion for summary judgment and then granted the motion, holding that the Medical Staff did not have the capacity to sue.

The parties then brought cross motions for summary judgment on the issue of whether the former bylaws constituted a contract between Avera Marshall and the Medical Staff or were otherwise enforceable against Avera Marshall. The district court again granted summary judgment to Avera Marshall, this time determining that the former bylaws did not constitute an enforceable contract between Avera Marshall and the Medical Staff or between Avera Marshall and any individual member of the Medical Staff. The district court further concluded that Avera Marshall had the authority to modify the bylaws without approval from the Medical Staff "if [Avera] substantially complies with the procedural prerequisites contained in the Medical Staff Bylaws." According to the district court, the undisputed factual record showed Avera Marshall substantially complied with the procedural prerequisites in the former medical staff bylaws when it repealed them and enacted the revised medical staff bylaws.

The court of appeals affirmed the district court. It agreed with the district court that the Medical Staff does not have the capacity to sue under Minnesota law because, among other reasons, it is not its own "ultimate creator," owns no property, and can "contract no indebtedness and pay no bills." *Med. Staff of Avera Marshall Reg'l Med.*

6

*Ctr. v. Avera Marshall*, 836 N.W.2d 549, 557 (Minn. App. 2013) (citation omitted) (internal quotation marks omitted). It also held that the medical staff bylaws do not constitute an enforceable contract. *Id.* at 562. Because the medical staff bylaws "are not contractual," the court of appeals concluded that Avera Marshall "has the authority to unilaterally amend the bylaws." *Id.*

On appeal from a grant of summary judgment, we determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). We must also construe the facts in the light most favorable to the party against whom summary judgment was granted—in this case the Medical Staff, *J.E.B. v. Danks*, 785 N.W.2d 741, 746 (Minn. 2010).[1]

I.

This appeal presents two primary issues: (1) whether the Medical Staff has the legal capacity to sue; and (2) whether the medical staff bylaws constitute a contract between Avera Marshall and the Medical Staff. We begin our analysis with the first issue.

---

[1] Because this matter is before us after a grant of summary judgment, the facts must be construed in the light most favorable to appellants, the parties against whom summary judgment was granted. *See J.E.B. v. Danks*, 785 N.W.2d 741, 746 (Minn. 2010). The dissent, however, ignores the procedural posture of this case when it first addresses what are supposedly the reasons why Avera Marshall's board unilaterally amended the medical staff bylaws. In this discussion, the dissent quotes extensively from statements Avera Marshall's President made. These "facts," however, are contested by appellants, and the dissent has presented them in a light most favorable to Avera Marshall, not appellants. As a result, the dissent's recitation of these "facts" is inconsistent with our standard of review.

The common law rule in Minnesota, established in *St. Paul Typothetae v. St. Paul Bookbinders' Union*, is that, "in the absence of a statute otherwise providing," unincorporated associations "have no legal entity distinct from that of their members" and therefore lack capacity to sue or be sued. 94 Minn. 351, 357, 102 N.W. 725, 726-27 (1905). In 1946, we held that Minnesota still followed the common law rule because the Legislature had not enacted a statute conferring legal capacity to sue upon unincorporated associations. *Bloom v. Am. Express Co.*, 222 Minn. 249, 252-53, 23 N.W.2d 570, 573 (1946). The next year, the Legislature enacted section 540.151. Act of Apr. 24, 1947, ch. 527, § 1, 1947 Minn. Laws 867 (codified at Minn. Stat. § 540.151 (2012)).

Minnesota Statutes § 540.151 provides:

> When two or more persons associate and act, whether for profit or not, under the common name, including associating and acting as a labor organization or employer organization, whether such common name comprises the names of such persons or not, they may sue in or be sued by such common name, and the summons may be served on an officer or a managing agent of the association. The judgment in such cases shall accrue to the joint or common benefit of and bind the joint or common property of the associates, the same as though all had been named as parties to the action.

Notwithstanding the enactment of section 540.151, we have since reaffirmed the common law rule. *See Galob v. Sanborn*, 281 Minn. 58, 62, 160 N.W.2d 262, 265 (1968) (concluding that a village public utility commission was merely a department or agency of a village and could not be sued in its own name). We have never directly addressed whether section 540.151 gives unincorporated associations the capacity to sue. Thus, the parties dispute whether Minn. Stat. § 540.151 abrogated the common law rule that unincorporated associations lack the capacity to sue.

Appellants acknowledge that at common law in Minnesota unincorporated associations did not have the capacity to sue, but argue that the Legislature abrogated that common law rule when it enacted Minn. Stat. § 540.151. Specifically, relying on *American Civil Liberties Union of Minnesota v. Tarek Ibn Ziyad Academy*, the Medical Staff argues that Minn. Stat. § 540.151 unambiguously grants the capacity to sue to associations that satisfy its statutory criteria. 788 F. Supp. 2d 950, 955-56 (D. Minn. 2011) (noting that the United States Court of Appeals for the Eighth Circuit has recognized that Minn. Stat. § 540.151 " 'permit[s] persons associated under a common name to sue under that name' and that associations can have standing to assert their members' rights" (quoting *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1049-50 (8th Cir. 2002)). According to appellants, section 540.151 allows them to sue because the Medical Staff consists of two or more persons who associate with each other and act for common purposes, using a common name. Further, appellants note that this action was brought in the association's common name.

Avera Marshall argues that, because the Medical Staff is subject to the authority and approval of the board and possesses no rights that supersede the general authority of the board, the Medical Staff is a department or agent of Avera Marshall rather than a voluntary association existing separately from the hospital. Therefore, Avera Marshall contends that under the common law rule the Medical Staff has no legal capacity to sue. According to Avera Marshall, the common law rule remains good law and is not superseded by Minn. Stat. § 540.151 because the statute is only procedural in nature. Rather than granting the legal capacity to sue, Avera Marshall argues that this statute

simply provides that associations that otherwise have the legal capacity to sue in Minnesota may do so under the association's common name.

We conclude that, under its plain language, Minn. Stat. § 540.151 grants to an unincorporated association the right to sue and be sued if it meets the statutory criteria. The statute states that people who associate under a common name "may sue in or be sued by such common name." *Id.* Avera Marshall's claim that section 540.151 simply creates procedures by which an unincorporated association granted the capacity to sue in another statute may bring such a lawsuit is contrary to the plain statutory language.[2] Section 540.151 contains no limiting language indicating that it applies only if another statute has granted an association the legal capacity to sue. Given the absence of such language and our rules of statutory interpretation that require us to give meaning to all the words used by the Legislature, *see* Minn. Stat. § 645.17(2) (2012), we can only conclude that when the Legislature used the words "[w]hen two or more persons associate and act . . . under the common name . . . , they may sue in or be sued by such common name," it intended to give such associated persons the legal capacity to sue.

Here, the Medical Staff is composed of two or more physicians who associate and act together for the purpose of ensuring proper patient care at the hospital under the

---

[2]     The dissent ignores this statutory language when it states that it "is not clear . . . the Legislature intended to give medical staffs the substantive right to sue when it enacted section 540.151." And, despite the fact that the meaning of section 540.151 is an issue of state law, the dissent gives deference to a federal court decision to support its claim that the statute may be procedural. *See Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1049 (8th Cir. 2002) (concluding in a single sentence without analysis or citation to authority that section 540.141 "is only procedural").

10

common name "Medical Staff." Therefore, because the Medical Staff satisfies the statutory criteria of section 540.151, we hold that it has the capacity to sue and be sued under Minnesota law.

## II.

Having determined that the Medical Staff has the capacity to sue, we turn next to the Medical Staff's argument that the medical staff bylaws create an enforceable contract between Avera Marshall and the Medical Staff. As noted earlier, the district court concluded that the medical staff bylaws did not create an enforceable contract between Avera Marshall and the Medical Staff or its individual members. The Medical Staff argues that the district court and the court of appeals erred because, in consideration for each physician's appointment to Avera Marshall's Medical Staff, the physician agreed to be bound by the full extent of the bylaws and the bylaws go beyond anything required by statute or rule. This promise to abide by the bylaws, appellants claim, was an integral part of the contract that existed between Avera Marshall and the Medical Staff. Appellants further argue that Avera Marshall was obligated to comply with the terms of the bylaws and that Avera Marshall breached the former bylaws' amendment and repeal provision by unilaterally modifying the bylaws.

Avera Marshall contends that the former bylaws were not an enforceable contract because consideration is lacking and there was therefore no bargained-for exchange with any individual physicians or any group of physicians. Avera Marshall maintains that it adopted the medical staff bylaws because it had a preexisting legal duty to do so under Minnesota administrative rules and Avera Marshall's own bylaws. Additionally, Avera

11

Marshall claims that nothing in the bylaws requires that Avera Marshall obtain approval from the Medical Staff before it amends the bylaws. According to Avera Marshall, both its corporate bylaws and the medical staff bylaws gave Avera Marshall the power to unilaterally modify the medical staff bylaws.

With respect to whether the former bylaws create a contract, the district court and court of appeals agreed with Avera Marshall, concluding that the former medical staff bylaws are not an enforceable contract because of a lack of consideration. *Med. Staff of Avera Marshall*, 836 N.W.2d at 560-62. Both courts reasoned that the bylaws lacked consideration because the bylaws simply memorialized Avera Marshall's preexisting duty under Minnesota Rules to adopt medical staff bylaws.[3]

---

[3]     Minn. R. 4640.0700 provides in part:

> The governing body or the person or persons designated as the governing authority in each institution shall be responsible for its management, control, and operation. It shall appoint a hospital administrator and the medical staff. It shall formulate the administrative policies for the hospital.

Minn. R. 4640.0700, subp. 2 (2013).

> Minn. R. 4640.0800 provides in part:

> The medical staff shall be responsible to the governing body of the hospital for the clinical and scientific work of the hospital. It shall be called upon to advise regarding professional problems and policies.

> In any hospital used by two or more practitioners, the medical staff shall be an organized group which shall formulate and, with the approval of the governing body, adopt bylaws, rules, regulations, and policies for the proper conduct of its work. The medical staff shall: designate one of its members as chief of staff; hold regular meetings for which minutes and

(Footnote continued on next page.)

12

In *Campbell v. St. Mary's Hospital*, without any discussion or analysis about whether medical staff bylaws constitute an enforceable contract between a hospital and its medical staff, we implied that a hospital's bylaws created contractual rights between a physician and the hospital. 312 Minn. 379, 388, 252 N.W.2d 581, 587 (1977) (affirming grant of summary judgment on doctor's breach of contract claim because "under the bylaws plaintiff was afforded a full measure of his contractual due process rights at every stage of the proceedings to revoke his surgical privileges"). Thus, we have recognized, at least implicitly, that a hospital's bylaws may constitute a contract between a hospital and its physicians.

A contract is formed when two or more parties exchange bargained-for promises, manifest mutual assent to the exchange, and support their promises with consideration. Restatement (Second) of Contracts § 17 (1981). "Consideration requires that one party to a transaction voluntarily assume an obligation on the condition of an act or forbearance by the other party." *U.S. Sprint Commc'ns Co., Ltd. v. Comm'r of Revenue*, 578 N.W.2d 752, 754 (Minn. 1998); *see also Baehr v. Penn-O-Tex Oil Corp.*, 258 Minn. 533, 539, 104 N.W.2d 661, 665 (1960) (explaining that consideration "insures that the promise enforced as a contract is not accidental, casual, or gratuitous, but has been uttered intentionally as the result of some deliberation, manifested by reciprocal bargaining or

---

(Footnote continued from previous page.)
> records of attendance shall be kept; and review and analyze at regular intervals the clinical experience in the hospital.

Minn. R. 4640.0800, subps. 1-2 (2013).

negotiation"). A promise to do something that one is already legally obligated to do provides no benefit and thus is a "mere naked promise," *Hilde v. Int'l Harvester Co. of Am.*, 166 Minn. 259, 260, 207 N.W. 617, 618 (1926), that does not constitute consideration. *Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 728 (Minn. 1985) (stating the common law rule that if a party does or promises to do what he is already legally obligated to do, there is insufficient consideration to support the new promise).

We begin our analysis of whether there was consideration by noting that the district court, the court of appeals, and Avera Marshall miss the point by focusing on the adoption of the medical staff bylaws as a preexisting legal obligation. First, nothing in the rules Avera Marshall relies on requires the medical staff bylaws to contain any specific provision. Those rules set out only the minimum requirements for adopting bylaws. "[B]ylaws which *exceed* the minimum standards required under state law satisfy the consideration requirement." Craig W. Dallon, *Understanding Judicial Review of Hospitals' Physician Credentialing and Peer Review Decisions*, 73 Temple L. Rev. 597, 647 (2000). Our review of the bylaws leads us to conclude that the bylaws at issue here exceed the minimum requirements set out in the administrative rules. While Minn. R. 4640.0800, subp. 2, requires the medical staff to formulate and adopt, with the approval of the hospital's governing body, bylaws, rules, regulations, and policies "for the proper conduct of its work," the rule leaves it to the medical staff and the hospital's governing body to determine the specifics of the bylaws, rules, regulations, and policies. Thus, the mere fact that hospitals have a preexisting legal obligation to adopt medical staff bylaws

does not provide much guidance as to whether the bylaws as adopted provide the basis for an enforceable contract between a hospital and its medical staff. [4]

Second, we note that focusing solely on Avera Marshall's preexisting duty to adopt medical staff bylaws completely ignores the fact that, before a doctor can be granted privileges at the hospital, the doctor must agree to abide by the medical staff bylaws. While it is true that before agreeing to abide by the prospective bylaws members of the Medical Staff had no ability to change or otherwise alter the bylaws, it is also true that they could have chosen not to join the Medical Staff because of those bylaws. Conversely, this focus ignores the fact that Avera Marshall could choose to either grant or not grant privileges.

---

[4] The dissent claims the medical staff bylaws are not a contract because language in the bylaws indicates that Avera Marshall did not intend to be bound by them. At the same time, the dissent claims the bylaws lack consideration because Avera Marshall was legally required to have medical staff bylaws. It is unclear how, on the one hand, Avera Marshall can be obligated to have such bylaws, yet at the same time have no intention to follow them. When viewed in totality, the dissent's position appears to be that hospitals must have medical staff bylaws but that those legally required bylaws are meaningless as hospitals may disavow any intention to follow them.

Beyond this inconsistency, the dissent's position is contrary to language in Avera Marshall's corporate bylaws that requires it to have and operate its medical staff under medical staff bylaws. Avera Marshall's corporate bylaws state that the board "shall organize the physicians . . . into a medical-dental staff under medical-dental staff bylaws approved by" the board and that "[t]here shall be bylaws . . . for the medical-dental staff that set forth its organization and government." Avera Marshall's corporate bylaws also make specific reference to sections of the medical staff bylaws.

The record in this case indicates that Avera Marshall formed a contractual relationship with each member of the Medical Staff upon appointment.[5]  Avera Marshall offered privileges to each member of the Medical Staff, so long as the Medical Staff member agreed to be bound by the medical staff bylaws as a condition of appointment.  Each member of the Medical Staff who accepted Avera Marshall's offer of appointment agreed to be bound by the bylaws.  Thus, there was a bargained-for exchange of promises and mutual consent to the exchange.  Importantly, there was also consideration.[6]  Both

_____

[5]  Other courts have similarly held that medical staff bylaws may be an enforceable contract, or an enforceable part of a contract, between a hospital and members of its medical staff.  *See, e.g.*, *Williams v. Univ. Med. Ctr. of S. Nev.*, 688 F. Supp. 2d 1134, 1142-43 (D. Nev. 2010); *Gianetti v. Norwalk Hosp.*, 557 A.2d 1249, 1255 (Conn. 1989); *Lo v. Provena Covenant Med. Ctr.*, 826 N.E.2d 592, 598-99 (Ill. App. Ct. 2005); *Terre Haute Reg'l Hosp., Inc. v. El-Issa*, 470 N.E.2d 1371, 1376-77 (Ind. Ct. App. 1984); *Virmani v. Presbyterian Health Serv. Corp.*, 488 S.E.2d 284, 287-88 (N.C. Ct. App. 1997); *St. John's Hosp. Med. Staff v. St. John Reg'l Med. Ctr., Inc.*, 245 N.W.2d 472, 474-75 (S.D. 1976); *Lewisburg Cmty. Hosp., Inc. v. Alfredson*, 805 S.W.2d 756, 759 (Tenn. 1991); *Bass v. Ambrosius*, 520 N.W.2d 625, 628 (Wis. Ct. App. 1994).

[6]  To be clear, consideration does not exist simply because the medical staff bylaws exist.  Consideration exists because, with the appointment of each member to the Medical Staff, that member and Avera Marshall both voluntarily assumed an obligation on the condition of an act by the other party—that is, each member of the Medical Staff agreed to be bound by the medical staff bylaws and Avera Marshall agreed to let each member of the Medical Staff practice at its hospital.  The dissent contends that these additional acts and promises cannot constitute consideration because "both sides were already under a preexisting legal duty to perform these functions."  The dissent, however, fails to explain how, before the appointment of each member to its medical staff, Avera Marshall was under a preexisting legal duty to allow that particular physician to practice at its hospital or why that physician was under a preexisting legal duty to follow Avera Marshall's medical staff bylaws.

The dissent also claims "there is no evidence to support the conclusion that the medical staff bylaws are supported by consideration regarding each individual medical staff member" because no member of the medical staff can change the bylaws.  The
(Footnote continued on next page.)

Avera Marshall and the members of its Medical Staff voluntarily assumed obligations on the condition of an act or forbearance on the part of the other.[7]

The district court and court of appeals both concluded that the Medical Staff did not have the capacity to sue Avera Marshall and that the medical staff bylaws did not constitute an enforceable contract between Avera Marshall and the Medical Staff. As a result, appellants' claims were dismissed. Because we conclude that the Medical Staff has the capacity to sue and be sued under Minn. Stat. § 540.151, and that the medical staff bylaws constitute an enforceable contract between Avera Marshall and the

---

(Footnote continued from previous page.)
existence of consideration is not dependent on a party's ability to change the terms of a contract before agreeing to it. *See U.S. Sprint Commc'ns Co.*, 578 N.W.2d at 754 (defining consideration). Moreover, to support this claim, the dissent cites a case that actually concluded that medical staff bylaws are part of an enforceable contract between a hospital and a member of its medical staff for the same reason we have concluded there is consideration in this case. *See Gianetti v. Norwalk Hosp.*, 557 A.2d 1249, 1255 (Conn. 1989) (concluding medical staff bylaws are an enforceable contract between a physician and a hospital and were "supported by valid consideration" because "[t]he hospital changed its position by granting medical staff privileges and the plaintiff physician has likewise changed his position in doing something he was not previously bound to be, i.e., to 'abide' by the hospital medical staff bylaws").

[7]     Our decision today is analogous to and consistent with our decision in *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983). In *Pine River*, we determined that employee-handbook provisions may create contractual obligations enforceable against an employer. *Id.* at 627. In doing so, we applied traditional contract formation principles to hold that an employee handbook may modify terms of an at-will employment contract. *Id.* at 626-27. We held that an employee accepted the employer's offer to modify the terms of his employment in line with the employee-handbook provisions when he continued working for the employer. *Id.* Later, when the bank summarily fired the employee, the bank violated the terms of the employee handbook, which provided for a three-stage disciplinary procedure before an employee could be discharged. *Id.* at 626, 631. The medical staff bylaws, like the employee handbook in *Pine River*, constitute the terms of an enforceable contract between Avera Marshall and the Medical Staff.

17

individual members of the Medical Staff, we reverse the decision of the court of appeals

and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

DISSENT

ANDERSON, Justice (dissenting).

I respectfully dissent. At its heart, this case is about who has ultimate control of Avera Marshall Regional Medical Center—Avera Marshall's Medical Staff or Avera Marshall's board of directors. As a matter of contract law, and under the terms of Avera Marshall's corporate bylaws and the medical staff bylaws, the answer to that question is Avera Marshall's board of directors. Consequently, I would affirm summary judgment in favor of respondents Avera Marshall, et al.

I.

I agree with the majority's recitation of the facts, but think it important to first address *why* Avera Marshall's board of directors unilaterally amended the medical staff bylaws, which gets to the heart of the dispute in this case. In 2009, Avera Health Systems assumed control of Weiner Memorial Medical Center, which had previously been owned and operated by the City of Marshall, and the hospital was incorporated as a nonprofit under the name Avera Marshall Regional Medical Center. Shortly thereafter, tension and conflict arose between members of the Medical Staff employed by Affiliated Community Medical Centers, P.A. (ACMC), who held privileges at Avera Marshall, and Avera Marshall's governing body.[1] According to the President and CEO of Avera

---

[1] These conflicts, from the perspective of Avera Marshall, included: ACMC physicians injected discussions of ongoing litigation between ACMC and Avera Marshall into Medical Executive Committee (MEC) meetings; ACMC physicians assumed a three-to-one majority control over the MEC compared to physicians employed directly by Avera Marshall and Avera Health Systems, in spite of an even split between ACMC and

(Footnote continued on next page.)

D-1

Marshall, the board of directors subsequently amended the medical staff bylaws to address the "dysfunction" of the Medical Staff, particularly its Medical Executive Committee (MEC), "which [wa]s obvious and ha[d] gone on for almost sixteen months." The adoption of the new bylaws "was also a result of [board of directors'] growing concerns about Dr. Meister's leadership" as he "conducted himself in a manner designed to exploit and harm [Avera-Marshall], as opposed to being an effective leader of the entire medical staff." Moreover, the problems within the MEC "resulted in dysfunctional quality review and credentialing processes at the Hospital"; the MEC had failed to carry out its functions under the old medical staff bylaws, including its credentialing and peer review functions; and the new bylaws were meant to "better promote quality review and patient safety free from bias."

In response to the changes to the medical staff bylaws, the appellants[2] filed a civil complaint seeking eight counts of declaratory and injunctive relief and one count of

(Footnote continued from previous page.)
Avera Marshall physicians in the makeup of the medical staff; MEC chair Dr. Steven Meister excluded Mary Maertens, President and CEO of Avera Marshall, from MEC meetings, even though she was an ex officio MEC member; ACMC members of the MEC conducted MEC meetings at ACMC offices with an attorney hired to represent MEC who was not authorized by the board of directors to participate in the meetings; Dr. Meister filed a complaint against Avera Marshall with the Joint Commission on Accreditation of Hospitals, which was dismissed; and various other actions by ACMC physicians that Avera Marshall felt threatened the quality of patient care. Some of these assertions are admitted by the Medical Staff, others are disputed, and the Medical Staff asserts other conflicts exist that were created by Avera Marshall. The atmosphere between the parties can be fairly described as poisonous.

[2]     When I refer to "the appellants," I am referring to both the Medical Staff and the individual members of the Medical Staff.

attorney fees and costs. Only three of the declaratory judgment counts are before us: whether the Medical Staff has legal capacity to sue (count one); whether the medical staff bylaws constitute a contract between Avera Marshall and the Medical Staff (count two); and whether Avera Marshall's board of directors could unilaterally amend the medical staff bylaws without obtaining two-thirds approval from voting members of the Medical Staff (count seven). The district court granted the respondents' motion for summary judgment as to these three counts, and the court of appeals affirmed. The appellants raised each of these issues in their petition for review with this court, and we granted full review.[3]

## II.

I am skeptical that appellant Medical Staff has standing to sue under Minn. Stat. § 540.151 (2012),[4] but I need not decide this issue, because even if the Medical Staff has

---

[3]    Specifically, the appellants raised the following three issues in their petition for review to this court: (1) whether a medical staff has legal capacity to sue under Minn. Stat. § 540.151 (2012); (2) whether medical staff bylaws constitute a contract or are otherwise judicially enforceable; and (3) whether a hospital can unilaterally change medical staff bylaws when the medical staff bylaws state that changes to the bylaws must be approved by two-thirds of the medical staff. The majority does not explain why it fails to address the third issue raised by the appellants.

[4]    Without a doubt, an entity such as the Medical Staff—which calls itself an "unincorporated association"—could not sue or be sued at common law. *See Bloom v. Am. Express Co.*, 222 Minn. 249, 251, 23 N.W.2d 570, 572 (1946). Minnesota Statutes § 540.151 provides that "[w]hen two or more persons associate and act, whether for profit or not, under the common name . . . , they may sue in or be sued by such common name." Despite the majority's insistence that I am "ignoring" the statutory language, it is not clear to me that the Legislature intended to give medical staffs the substantive right to sue when it enacted section 540.151, because the statute has been described as "only procedural." *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d

(Footnote continued on next page.)

standing to sue, the Medical Staff and its members do not have the rights they claim to have under the medical staff bylaws because those bylaws do not create an enforceable contract.[5] There is a split of authority regarding whether medical staff bylaws constitute a contract between a hospital's medical staff or its members and the hospital. *See* 1 Karen S. Rieger et al., Health Law Practice Guide § 2:16 (2014) (listing cases in which courts recognized medical staff bylaws as a contract, and those in which they did not); Craig W. Dallon, *Understanding Judicial Review of Hospitals' Physician Credentialing and Peer Review Decisions*, 73 Temp. L. Rev. 597, 639-642 nn. 288, 290 (2000) (discussing cases). Those courts holding that medical staff bylaws do not constitute a contract often do so on the ground that a necessary component of contract formation is missing in medical staff bylaws—namely, consideration. *See, e.g.*, *Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 600 S.E.2d 321, 326 (W. Va. 2004) (concluding that hospital had a

---

(Footnote continued from previous page.)
1032, 1049 (8th Cir. 2002). Moreover, while not explicitly stating the statute is procedural, rather than substantive, we have previously treated section 540.151 as procedural. *See, e.g.*, *Galob v. Sanborn*, 281 Minn. 58, 62, 160 N.W.2d 262, 265 (1968); *State ex rel. Ryan v. Civil Serv. Comm'n of City of Minneapolis*, 278 Minn. 296, 298, 154 N.W.2d 192, 194 (1967). Thus, absent a legislative grant of standing, the Medical Staff must be dismissed as a party to this suit. *See Exeter Hosp. Med. Staff v. Bd. Of Trs. of Exeter Health Res., Inc.*, 810 A.2d 53, 56 (N.H. 2002).

[5] Regardless of the resolution of the Medical Staff's capacity to sue, we still must address the contract issue in this case because Dr. Steven Meister and Dr. Jane Willet also filed suit in their individual capacities. These doctors clearly have capacity and standing to sue in their individual capacities.

preexisting duty under state law to adopt medical staff bylaws and thus consideration was lacking).[6]

A.

In order to state a claim for breach of contract under Minnesota law, a plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). One of the essential features of contract formation is consideration, which is "something of value given in return for a performance or a bargained for promise of performance." 20 Brent A. Olson, *Minnesota Practice—Business Law Deskbook* § 7:7 (2013-2014 ed.). "Consideration . . . insures that the promise enforced as a contract is not accidental, casual, or gratuitous, but has been uttered intentionally as the result of some deliberation, manifested by reciprocal bargaining or negotiation." *Baehr v. Penn-O-Tex*

---

[6] *See also O'Byrne v. Santa Monica-UCLA Med. Ctr.*, 114 Cal. Rptr. 2d 575, 583 (Cal. Ct. App. 2001) ("[State regulations] required the Medical Center to appoint a medical staff, they required the medical staff to adopt bylaws, and they required the medical staff to abide by those bylaws. Clearly, there was no consideration given for the Bylaws—neither the Medical Center nor plaintiff conferred on the other any more than what was required by law."); *Tredrea v. Anesthesia & Analgesia, P.C.*, 584 N.W.2d 276, 285-87 (Iowa 1998) (holding medical staff bylaws did not constitute a contract and noting that hospitals in some cases are required by statute to promulgate bylaws so consideration may be lacking); *Egan v. St. Anthony's Med. Ctr.*, 244 S.W.3d 169, 174 (Mo. 2008) ("[A] hospital's duty to adopt and conform its actions to medical staff bylaws as required by [a] regulation is a preexisting duty, and a preexisting duty cannot furnish consideration for a contract."); 41 C.J.S. *Hospitals* § 27 (2006) ("[T]here is authority that absent express language to the contrary, a hospital's medical staff bylaws do not constitute a contract between the hospital and its staff physicians, since the essential element of valuable consideration is absent.").

*Oil Corp.*, 258 Minn. 533, 539, 104 N.W.2d 661, 665 (1960).  A promise to do what one is legally obligated to do cannot constitute consideration.  *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 728 (Minn. 1985).

Under Minnesota law, as the majority acknowledges, the governing body of a hospital must appoint a medical staff.  Minn. R. 4640.0700, subp. 2 (2013).  The medical staff must formulate "bylaws, rules, regulations, and policies for the proper conduct of its work."  Minn. R. 4640.0800, subp. 2 (2013).  But the medical staff does not have unilateral authority to adopt its own bylaws; instead, the medical staff bylaws are subject to "the approval of the [hospital's] governing body."  *Id.*  What these rules tell us is this: the Medical Staff was bound by law to formulate bylaws and Avera Marshall had a legal obligation to not only have a medical staff, but to also adopt bylaws "for the proper conduct of [the medical staff's] work."  *Id.*  Consequently, the Medical Staff's and Avera Marshall's fulfillment of their legal obligations in formulating and adopting medical staff bylaws was simply the fulfillment of a preexisting legal duty, and thus neither party conferred on the other any more than what the law already required.[7]  Accordingly, the

---

[7]  The majority contends that the medical staff bylaws are supported by consideration because the content of those bylaws exceeds the minimum requirements for adopting bylaws as set out in the administrative rules.  While this may be true, I nevertheless conclude that consideration is lacking here because the rules themselves place broad discretion in the hands of the medical staff to formulate bylaws and the hospital to ultimately approve the content of the bylaws.  *Cf. O'Byrne*, 114 Cal. Rptr. 2d at 584 ("Plaintiff does not explain precisely how the Bylaws are more expansive and comprehensive than those provided for by law, in light of the broad discretion given the medical staff to adopt appropriate bylaws.").  The majority acknowledges that "members of the Medical Staff had no ability to change or otherwise alter the bylaws."  There is no evidence to support the conclusion that the medical staff bylaws are supported by

(Footnote continued on next page.)

simple fact that medical staff bylaws exist is not enough to give the Medical Staff, or individual medical staff members, contractual rights under the bylaws.

B.

Even if consideration somehow existed, the contract nonetheless is invalid because there was no mutual assent. In order to form a contract, there must be mutual assent among the parties to the contract to the contract's essential terms. *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011); *see Minneapolis Cablesystems v. City of Minneapolis*, 299 N.W.2d 121, 122 (Minn. 1980). The medical staff has conceded that Avera Marshall has the "ultimate authority to make final decisions" while the medical staff provided mere "input." Indeed, the medical staff bylaws do not express an intent by Avera Marshall to be bound by the terms of the bylaws. *See Hamilton v. Boyce*, 234 Minn. 290, 292, 48 N.W.2d 172, 174 (1951) ("No contract is formed by the signing of an instrument when the offeree is aware that the offerer does not intend to be bound by the wording in the instrument."); *Wells Constr. Co v. Goder Incinerator Co.*, 173 Minn. 200, 205, 217 N.W. 112, 114 (1927) (concluding that no contract was created when one party did not intend to be bound). The expressed

(Footnote continued from previous page.)
consideration regarding each individual medical staff member. *See Gianetti v. Norwalk Hosp.*, 557 A.2d 1249, 1254 (Conn. 1989) (concluding medical staff bylaws were not supported by consideration because the hospital had a preexisting duty to adopt bylaws and "the plaintiff ma[de] no claim that he had any input into the bylaws"). The majority also insists that consideration exists because "each member of the Medical Staff agreed to be bound . . . and Avera Marshall agreed to let each member of the Medical Staff practice at its hospital." This does not change the fact, however, that both sides were already under a preexisting legal duty to perform these functions, and thus, there was no consideration.

purpose of the medical staff is, among other things, to provide that all patients receive appropriate medical care and to provide a means whereby the medical staff and Avera Marshall's board of directors may discuss issues that arise, *"with the understanding that the Medical Staff is subject to the ultimate authority of the Board of Directors*." Medical Staff Bylaws § 2.1(e) (emphasis added). Directly after the enumerated purposes of the medical staff, the medical staff bylaws describe the authority of the medical staff: "*Subject to the authority and approval of the Board of Directors*, the Medical Staff shall have and exercise such power as is reasonably necessary to discharge its responsibilities under these bylaws." Medical Staff Bylaws § 2.2 (emphasis added). Thus, the language of the bylaws indicates that Avera Marshall intended to retain final authority over the hospital and medical staff, and consequently, did not agree to be bound by the terms of those bylaws.

In considering whether medical staff bylaws constituted a contract, the Sixth Circuit (in an unpublished opinion) and other jurisdictions have relied on similar language to conclude that a hospital did not intend to be bound by the terms of medical staff bylaws. *Talwar v. Catholic Healthcare Partners*, 258 F. App'x 800, 805 (6th Cir. 2007) ("The self-declared purpose of the Bylaws and Credentials Manual is to protect the best interests of patients, regulate activities of the medical staff, and insure the provision of quality medical care for the hospital's patients, not to declare or create contractual rights of individual members of the medical staff."); *see also Munoz v. Flower Hosp.*, 507 N.E.2d 360, 365 (Ohio Ct. App. 1985) (concluding no contract existed when the medical staff bylaws stated in its preamble "that the bylaws are 'subject to the ultimate authority

of the applicable governing bodies' " and consequently "[t]he obvious interpretation of the bylaws' preamble [wa]s that the . . . hospital [wa]s not to be bound by the staff bylaws"); 41 C.J.S. *Hospitals* § 27 (2006) ("A hospital's medical staff bylaws may constitute a contract . . . particularly where the hospital and its staff indicate an intent to be bound by their terms, *but not otherwise*." (emphasis added)). Therefore, because the medical staff is subject to the ultimate authority of Avera's Marshall's board of directors under the terms of the medical staff bylaws, I would conclude that Avera Marshall did not intend to be bound contractually by the bylaws.

C.

There is another problem with the appellants' argument that the medical staff bylaws constitute a contract—namely, *who* are the parties to the contract? Is the purported contract between the Medical Staff as a whole and Avera Marshall?[8] Or is the purported contract between each individual Medical Staff member and Avera Marshall? Based on the briefing and oral argument, it is not clear who the contractual parties are in this dispute. The problem with the absence of clearly identified parties is that we simply do not know, and cannot know, whether an additional necessary component of contract

---

[8]     Another unresolved issue is whether the Medical Staff even has capacity to contract. Indeed, it is arguable that the Medical Staff is simply a constituent part of Avera Marshall aimed at advancing the hospital's policy of providing quality patient care, not a separate legal entity capable of entering into a contract. *See* 1 Rieger et al., *supra*, § 2:16 ("If the healthcare entity bylaws and the medical staff bylaws state that the medical staff is a constituent part of the facility and not a separate entity capable of constituting a separate party to a contract, the medical staff bylaws should be viewed as a policy of the healthcare entity which governs the medical staff, and should not operate as a contract.").

formation is present here: an objective manifestation of mutual assent. *See* 1 Richard A. Lord, *Williston on Contracts* § 3:2 (4th ed. 2008). When it is unclear who the parties to the contract are, how can there have been an objective assent to the purported contract's essential terms?

This is not to say that medical staff bylaws can never constitute a contract between a medical staff and a hospital. A medical staff could bargain with a hospital's governing body to secure language in the medical staff bylaws expressly declaring the medical staff's rights under the bylaws. If the medical staff bylaws are written to give the medical staff and its members the rights to sue and recover for breach of the medical staff bylaws, such an agreement arguably would be enforceable against the hospital. *See Mason v. Cent. Suffolk Hosp.*, 819 N.E.2d 1029, 1032 (N.Y. 2004) (stating that the court would enforce medical staff bylaws as a contract if clearly written, but concluding that the bylaws in the case before it formed no such contract); *Holt v. Good Samaritan Hosp. & Health Ctr.*, 590 N.E.2d 1318, 1322 (Ohio Ct. App. 1990) ("[Medical] staff bylaws constitute a binding contract 'only where there can be found in the bylaws an intent by both parties to be bound.' " (quoting *Munoz*, 507 N.E.2d at 360)). But here, there is no language in the medical staff bylaws stating that the provisions of the bylaws are enforceable against the hospital, and so I would conclude that the bylaws do not

constitute an enforceable contract.[9]   Because there is no contract, I would affirm summary judgment in favor of the respondents on count two of the complaint.

III.

Having determined that the medical staff bylaws do not constitute a contract between the medical staff or its members and Avera Marshall, I turn to the final issue in this appeal: whether Avera Marshall's board of directors was authorized to unilaterally amend the medical staff bylaws. The appellants, representing the interests of the medical staff, argue that Avera Marshall breached the medical staff bylaws by unilaterally changing the bylaws over the objection of the majority of medical staff members. Essentially, they argue that the medical staff bylaws outline a specific process for amending the bylaws, which includes obtaining an affirmative vote of two-thirds of the medical staff members eligible to vote, and that Avera Marshall breached this process by amending the medical staff bylaws without obtaining two-thirds approval. *See* Medical Staff Bylaws § 17.2. I disagree. In my view, under the terms of Avera Marshall's corporate bylaws and the medical staff bylaws, the board of directors was authorized to unilaterally amend the medical staff bylaws.

---

[9]    The majority contends that concluding the medical staff bylaws constitute a contract is analogous to our decision in *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983), in which we held that employee-handbook provisions may constitute a contract. I disagree; *Pine River* is distinguishable for several reasons. First, the employer in *Pine River* did not have a preexisting legal obligation to adopt an employee handbook. Second, Avera Marshall declared an intent not be bound by the bylaws; the employer in *Pine River* made no such declaration about the employee-handbook provisions. Third, the employee-handbook provisions in *Pine River* simply modified the terms of an express employment contract, whereas here the medical staff seeks to establish that the bylaws are the entire contract.

A.

I first turn to Avera Marshall's corporate bylaws for guidance as to the process required for amending the medical staff bylaws. Avera Marshall's articles of incorporation vest management and control of the hospital in its board of directors. Articles of Incorporation, Art. V. Any powers supposedly granted to the medical staff under the medical staff bylaws "must originate from, and be authorized by, the Board pursuant to the Corporate Bylaws." *Mahan v. Avera St. Luke's*, 621 N.W.2d 150, 155 (S.D. 2001) (concluding that medical staff bylaws constitute a contract, but the source of the contractual rights flow from the hospital's bylaws); *see also Radiation Therapy Oncology, P.C. v. Providence Hosp.*, 906 So.2d 904, 910-11 (Ala. 2005) (concluding hospital did not breach medical staff bylaws by transferring its radiation oncology practice to another corporation and stating, under the terms of the corporate bylaws, "the medical staff does not have the power or right to overrule a valid business decision made by the board"); *Bartley v. E. Maine Med. Ctr.*, 617 A.2d 1020, 1022 (Me. 1992) (reading a physician's rights under medical staff bylaws through the lens of the hospital's corporate bylaws, and concluding "[i]t is clear from these bylaw provisions that the board of trustees . . . has the authority to manage all the affairs of the hospital"). Although not binding on this court, *Mahan* is helpful in articulating the relationship between medical staff bylaws and a hospital's corporate bylaws:

> Their legal relationship is similar to that between statutes and a constitution. They are not separate and equal sovereigns. The former derives its power and authority from the latter. Hence, to determine whether the staff was granted the power that it now claims to possess, any judicial analysis must begin with an examination of the Corporate Bylaws.

621 N.W.2d at 155. Put simply, the corporate bylaws are a superior source of authority as compared to the medical staff bylaws when determining what process is required for amending the medical staff bylaws.

To determine what rights the medical staff and its individual members have, therefore, it is necessary to analyze Avera Marshall's corporate bylaws. The corporate bylaws provide that "[t]he Board of Directors shall organize the physicians and appropriate other persons granted practice privileges in the hospital owned and operated by the Corporation into a medical-dental staff under medical-dental staff bylaws." Avera Marshall Corporate Bylaws § 15.1(a). Under this provision, Avera Marshall's board of directors was required not only to organize a medical staff, but also to adopt medical staff bylaws that would govern the medical staff. The corporate bylaws further provide that:

> There shall be bylaws, rules and regulations, or amendments thereto, for the medical-dental staff that set forth its organization and government. Proposed bylaws, rules and regulations, or amendments thereto, *may be recommended by the medical-dental staff or the Board of Directors.*

Avera Marshall Corporate Bylaws § 15.3 (emphasis added).[10] Importantly, Avera Marshall's corporate bylaws grant to the medical staff the right to *recommend* medical

---

[10] In ascertaining the scope of the board of directors' authority to amend the medical staff bylaws, the appellants incorrectly rely, for the most part, on the medical staff bylaws. The proper focus, however, is on the language of the corporate bylaws. The appellants' only argument regarding the corporate bylaws is that it is inconsistent for the board to have the express right to "recommend" bylaws changes, and, simultaneously, the implied right to *impose* changes. But the appellants ignore the portion of the corporate bylaws that vests authority in the board to "exercise oversight of the business affairs of [Avera Marshall]" and to "exercise all of the powers which may be exercised or performed by [Avera Marshall]." Avera Marshall Corporate Bylaws § 4.1. Those

(Footnote continued on next page.)

staff bylaws.  The corporate bylaws say nothing, however, about requiring a two-thirds vote from voting members of the medical staff in order to amend the bylaws.

A final provision of Avera Marshall's corporate bylaws is relevant, and provides in pertinent part:

> The Board of Directors shall exercise oversight of the business affairs of [Avera Marshall] and shall have and exercise all of the powers which may be exercised or performed by [Avera Marshall] under the laws of the State of Minnesota, the Corporation's Articles of Incorporation, and these Bylaws . . . .

Avera Marshall Corporate Bylaws § 4.1.  In interpreting a similar hospital bylaw, the South Dakota Supreme Court declared:  "Therefore, the medical staff has no authority over *any* corporate decisions unless specifically granted that power in the Corporate Bylaws or under the laws of the State of South Dakota."  *Mahan*, 621 N.W.2d at 155. Here, Avera Marshall's corporate bylaws *do not* grant to the medical staff the authority to preclude Avera Marshall's board of directors from amending the medical staff bylaws unless two-thirds of the medical staff agree to the amendments.  To the contrary, the corporate bylaws only grant to the medical staff the limited power to *propose* amendments.  Under the terms of its corporate bylaws, therefore, Avera Marshall retained the authority to unilaterally amend the medical staff bylaws.

---

(Footnote continued from previous page.)
powers include, absent express language in the corporate bylaws saying otherwise, amending the medical staff bylaws.

Contrary to the appellants' argument, the authority to unilaterally amend the medical staff bylaws, as stated in the corporate bylaws, was also expressly retained by Avera Marshall in the medical staff bylaws. It is true that one provision of the medical staff bylaws provides that a change in those bylaws "shall require an affirmative vote of two-thirds of the Members eligible to vote." Medical Staff Bylaws § 17.2. But when this provision is read in conjunction with the rest of the medical staff bylaws, the board of directors' ultimate authority to manage the medical staff and hospital is clear. *See Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010) ("[T]he terms of a contract are not read in isolation."). The enumerated purposes of the medical staff, as stated in the medical staff bylaws, include the following:

> To provide a means whereby issues concerning the Medical Staff and the Medical Center may be directly discussed by the Medical Staff with the Board of Directors and the Administration, *with the understanding that the Medical Staff is subject to the ultimate authority of the Board of Directors.*

Medical Staff Bylaws § 2.1(e) (emphasis added). This provision indicates a clear intent by Avera Marshall to retain control over the medical staff, and by association the medical staff bylaws, by stating that the medical staff is "subject to the ultimate authority" of Avera Marshall's board of directors.

Avera Marshall also expressly retained control over the medical staff in the portion of the medical staff bylaws controlling the process for amending or repealing the medical staff bylaws. After the process for amending or repealing the medical staff bylaws is delineated in those bylaws, there is a savings clause that states: "Nothing

contained herein shall supersede the general authority of the Medical Center Board of Directors as set forth in its corporate bylaws or applicable common law or statutes." Medical Staff Bylaws § 17.1-3. As discussed previously, Avera Marshall's board of directors was granted broad power under the corporate bylaws. *See* Avera Marshall Corporate Bylaws § 4.1 ("The Board of Directors shall exercise oversight of the business affairs of [Avera Marshall] and shall have and exercise all of the powers which may be exercised or performed by [Avera Marshall]."). Given the grant of broad power to the board of directors, and the expressed intent of Avera Marshall to retain that power under the terms of the medical staff bylaws, it is not reasonable to interpret the medical staff bylaws as precluding the board from unilaterally amending those bylaws.[11]

---

[11] Importantly, Minnesota law also supports Avera Marshall's position that it can unilaterally amend the medical staff bylaws. Under Minnesota Rule 4640.0700, subpart 2, "[t]he governing body or the person or persons designated as the governing authority [of a hospital] shall be responsible for its management, control, and operation." And because Avera Marshall is a nonprofit corporation, it is subject to Minn. Stat. § 317A.201 (2012), which provides that a nonprofit corporation "must be managed by or under the direction of a board of directors." While these provisions do not conclusively state one way or the other whether a hospital such as Avera Marshall has unilateral authority to amend medical staff bylaws, they do show that the party with the ultimate responsibility to manage and govern a hospital is the hospital's board of directors. Interpreting the medical staff bylaws in a way that requires Avera Marshall's board of directors to obtain two-thirds approval of the medical staff before amending the medical staff bylaws would severely limit the board's authority to manage and govern the hospital and the medical staff. *See Weary v. Baylor Univ. Hosp.*, 360 S.W.2d 895, 897 (Tex. Ct. App. 1962) ("[I]nternal procedures set forth in the Medical Staff By-Laws, even though such By-Laws be approved and adopted by the Governing Board, cannot limit the power of the Governing Board of the Hospital.").

C.

Finally, the appellants argue that the standards promulgated by the Joint Commission on Accreditation of Hospitals (Joint Commission) preclude a hospital from unilaterally amending medical staff bylaws, providing evidence that Avera Marshall could not unilaterally amend the medical staff bylaws. The appellants are wrong. Hospitals licensed in Minnesota may choose either to be inspected by the Commissioner of Health or alternatively be accredited by "an approved accrediting organization." Minn. Stat. § 144.55, subd. 4 (2012). One such approved accrediting organization is the Joint Commission, which has historically "played a defining role in developing, implementing and enforcing minimum standards of conduct by which hospitals and their stakeholders function." Brian M. Peters & Robin Locke Nagele, *Promoting Quality Care & Patient Safety: The Case for Abandoning the Joint Commission's "Self-Governing" Medical Staff Paradigm*, 14 Mich. St. U. J. Med. & L. 313, 319 (2010). Under Minnesota law, it is recommended, but not required, that a hospital adopt the Joint Commission standards. Minn. R. 4640.0700, subp. 1 (2013). Across the nation, 88 percent of hospitals are accredited by the Joint Commission. Peters, *supra*, at 321. Prior to 2012, Avera Marshall was accredited by the Joint Commission.

One of the Joint Commission's standards provides that "[n]either the organized medical staff nor the governing body may unilaterally amend the medical staff bylaws or rules and regulations." JCAH Comprehensive Accreditation Manual for Hospitals, 2010, Standard MS.01.01.03. If this provision applied to Avera Marshall, it is arguable that Avera Marshall violated the provision when it amended the medical staff bylaws without

obtaining the approval of the medical staff.[12]  Notably, however, the bylaws in effect at the time Avera Marshall amended the medical staff bylaws did not contain Standard MS.01.01.03, or language similar to that standard.  More importantly, even if Avera Marshall was subject to the standard by reason of its decision to be accredited by the Joint Commission, it withdrew from Joint Commission accreditation on January 19, 2012, effective as of January 30, 2012.  The amended medical staff bylaws did not take effect until May 1, 2012.  Consequently, Standard MS.01.01.03—and its prohibition on unilaterally amending medical staff bylaws—did not apply to Avera Marshall.

## IV.

I am concerned that today's majority opinion will encourage conflict between medical staffs and a hospital's board of directors.[13]  Ultimately, in my view, a hospital's

---

[12]     It is also arguable that Avera Marshall *did comply* with Standard MS.01.01.03 by seeking written feedback from medical staff members regarding the amendments proposed to the medical staff bylaws and making changes to the bylaws based on these written comments.  In the end, however, it does not matter whether or not Avera Marshall complied with Standard MS.01.01.03 because it was not bound by the standard.

[13]     In its brief and at oral argument, counsel for Avera Marshall frequently referenced the fact that Avera Marshall is a nonprofit corporation and the members of the medical staff that are pursuing this lawsuit are employed by ACMC, a for-profit competitor of Avera Marshall.  The relevance of this repeated assertion to the legal issues before us is not entirely clear, but to the extent the implication here is higher moral purpose, or better governance, for nonprofit organizations as compared to for-profit businesses, that claim is not only unproven, it is highly suspect. *See* Nicole Gilkeson, *For-Profit Scandal in the Nonprofit World:  Should States Force Sarbanes-Oxley Provisions Onto Nonprofit Corporations?*, 95 Geo. L.J. 831, 832 (2007) ("In recent years, the nonprofit sector has been rocked by fraud and scandal."); Evelyn Brody, *Agents Without Principals:  The Economic Convergence of the Nonprofit and For-Profit Organizational Forms*, 40 N.Y.L. Sch. L. Rev. 457, 460 (1996) ("Various economic forces—like resource
(Footnote continued on next page.)

board of directors must be allowed to amend medical staff bylaws when it has expressly

reserved ultimate authority over the medical staff and determines that doing so is in the

best interest of the hospital and patient care.[14]  This does not mean, of course, that a

hospital board of directors will make the correct decision or that members of the medical

staff should not provide advice, guidance, and, where necessary, criticism of board

decisions.  But, in the end, the board must have the power to take steps to resolve

problems and end conflict by amending the medical staff bylaws, without fear of

prolonged litigation.  *Cf. Mason*, 819 N.E.2d at 1032 ("A decision by those in charge of a

hospital to terminate the privileges of, or deny privileges to, a doctor who may be their

colleague will often be difficult.  It should not be made more difficult by the fear of

subjecting the hospital to monetary liability.").[15]

---

(Footnote continued from previous page.)
dependency, institutional isomorphism, and organization slack—mold nonprofits and for-profits into similar configurations with similar problems.").

[14]      It is particularly important for a hospital to have authority to amend medical staff bylaws in light of our decision in *Larson v. Wasemiller*, 738 N.W.2d 300, 313 (Minn. 2007), recognizing that a hospital can be liable for a claim of negligent physician credentialing.  Here, Avera Marshall's board of directors amended the medical staff bylaws to vest final credentialing authority with the board, because, according to the President and CEO of Avera Marshall, the MEC was not fulfilling its duties with respect to medical staff credentialing.  "It [is] completely illogical to first impose a duty of reasonable care upon a hospital, and then later strip the hospital of the ability and power to implement the policies and programs required to fulfill that duty."  *Mahan*, 621 N.W.2d at 161.

[15]      *See also Tredrea v. Anesthesia & Analgesia, P.C.*, 584 N.W.2d 276, 287 (Iowa 1998) (noting that "[i]f the view of these plaintiffs prevailed, the hospital could not scale down or close a department, regardless of the advisability of doing so, without incurring liability"); *Zipper v. Health Midwest*, 978 S.W.2d 398, 417 (Mo. Ct. App. 1998) ("The
(Footnote continued on next page.)

For the foregoing reasons, I would affirm the decision of the court of appeals, and so I respectfully dissent.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Anderson.

---

(Footnote continued from previous page.)
holding that hospital bylaws do not constitute a contract between the hospital and its medical staff is in accord with strong public policy principles . . . .  Allowing a physician to seek damages for an alleged failure of a hospital to follow the procedures established by its bylaws is counter to this policy.").