GILDEA, Chief Justice
(dissenting).
The majority holds that the bad check appellant sent to the county to pay her property taxes was to pay for goods or services provided in the past and therefore was a check “given for a past consideration,” as that term is used in MinmStat. § 609.535, subd, 2 (2014). I disagree with the majority’s interpretation. But even if the majority correctly interprets the statute, appellant did not send her check to *29 pay for goods or services provided in the past; she sent the check to pay taxes. Accordingly, I dissent.
On February 24, 2015, appellant Rristyn Schouweiler wrote a check for nearly $2,000 payable to Wabasha County for past due property taxes, penalties, and interest. The check was returned for insufficient funds. Wabasha County sent appellant a notification that she had 5 days to make the delinquent payment, a notification she claims not to have received. She did not make the delinquent payment within 5 days. The State eventually charged appellant with issuance of a dishonored check under Minn.Stat. § 609.535, subd. 2.
Appellant moved to dismiss the charge due to lack of probable cause, arguing that the check she wrote fell into the statutory exception for “a check given for a past consideration,” Minn.Stat. § 609.535, subd. 5 (2014). After a hearing, the district court agreed and dismissed the complaint. The court reasoned that there was no “contemporaneous exchange of goods or services for the check” and therefore the check fell within the statutory exception.
The State appealed, and the court of appeals reversed and remanded the case for trial. The court of appeals interpreted the statutory exception for “a check given for a past consideration” as a reference to the contractual term of art, “past consideration,” and concluded that because appellant’s check was not given to support a promise to pay arising under contract law, the exception did not apply. State v. Schouweiler, No. A15-1461, 2016 WL 102578, at *2-3 (Minn.App. Jan. 11, 2016).
The relevant statutory provision states: “This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check or a check issued to a fund for employee benefits.” MinmStat. § 609.535, subd. 5. Under principles of contract law, “consideration” is “something of value given in return for a performance or a bargained for promise of performance.” Med. Staff of Avera Marshall Reg’l Med. Ctr. v. Avera Marshall, 857 N.W.2d 695, 706 (Minn.2014) (Anderson, J., dissenting) (quoting 20 Brent A. Olson, Minnesota Practice— Business Law Deskbook § 7:7 (2013-2014 ed.)). As the court of appeals reasoned, a purported consideration that is given before the promise to pay was made “was neither induced by the promise nor paid in exchange of it” and thus “cannot, properly speaking, be sufficient, valid, legal consideration.” Schouweiler, 2016 WL 102578, at *3 (quoting 4 Richard A. Lord, Willi-ston on Contracts § 8:11 (4th ed.2008)). As the majority recognizes, such a purported consideration is referred to by the legal term of art “past consideration,” which will not support a legally binding promise.
I interpret the statute the same way the court of appeals did. The exemption from criminal liability for writing a bad “check given for a past consideration,” makes sense if the term “past consideration” is given its contract-law meaning. It is easy to imagine that the Legislature might not want to criminalize the . writing of a bad check when the party writing the check has no obligation to pay. Under the contract-law meaning of “past consideration” adopted by the court of appeals, no criminal liability attaches for writing such a check.
The majority goes a different route, reasoning that the phrase “a check given for a past consideration” does not refer to the contractual term of art, but to the phrase’s purported 1 ordinary, non-technical meaning, which the majority takes to be “a check given for goods or services received in the past,” or perhaps more broadly, “a check given as payment for something of *30 value received in the past.” I disagree with the majority’s interpretation.
First, assuming the statutory text has an ordinary, non-technical meaning, the interpretation the majority adopts is not workable. Specifically, after referring to non-legal dictionaries, the court interprets the term “consideration” to mean either “something given as recompense” or “payment given in exchange for a service rendered.” But when those meanings are substituted into the statute’s phrase “a check given for a past consideration,” the statute would read: “a check given for a past [jthing given as recompense,” or “a check given for a past payment given in exchange for a service rendered.” Those constructions do not naturally mean''the same thing as “a check given for something of value [such as a good or service] that was received in the past,” the majority’s chosen phrase. In my view, if the Legislature had meant the exception to cover checks issued to . pay for goods or services received in the past,. the Legislature would have said that. The Legislature instead used a term that has a well-developed technical meaning, and I would apply that meaning.
But, the majority reasons, the surrounding text of subdivision 5 shows that the Legislature could not have intended to use the term “past consideration” according to its technical meaning. The majority looks to the full text of subdivision 5, which provides: “This section does not apply to a postdated check or to a check given for a past consideration, except a payroll .check or a. check issued to a fund for employee benefits,” , Minn.Stat. § 609.535, subd. 5 (emphasis: added). Correctly identifying the italicized text as an “exception to the exception” to criminal liability, the majority reasons that “an employee’s payroll or benefits must first be a type of ‘past consideration’ before they can logically be considered as exceptions to the past-consideration provision.” And reasoning that “[a]n employee’s pay and benefits are typically bargained for when an employment agreement is made,” the court concludes that a check for payroll or benefits therefore cannot be for a past consideration in the contract-law sense.
The majority is mistaken. Regardless what typically occurs, it is clear that an employer can and . may make a non-bargained-for payment to employee payroll, such as a holiday bonus. Likewise, some types of employee benefit plans, such as profit sharing plans, allow employers to choose when to make a contribution. “A profit sharing plan ... allows the employer to choose how much to contribute to the plan (out of profits or otherwise) each year, including making no contribution for a year.” U.S. Dep’t of Labor & Internal Revenue Serv., Profit Sharing Plans for Small Businesses 1 (2014), https://www. dol.gov/ebsa/publications/profitsharing. html. An employer might, for example, publicly promise to provide such a bonus or plan contribution, citing its recognition of employees having exceeded sales goals throughout the year. Such a promise would clearly be for “past consideration” as that term is used in contract law, because the purported consideration for it— the employees’ performance in exceeding sales goals—occurred in the past. The majority’s argument with reference to the surrounding text of subdivision 5 therefore is unpersuasive.
In sum, I disagree with the majority’s interpretation.. I would interpret the statute- as the court of appeals did, and affirm on that basis.
But even assuming that the majority correctly interprets the statute, I would still affirm. The majority’s interpretation exempts a check given for a good or service that was received in the past. But a *31 payment for property taxes is not “given for a good or service.” . It is given in order to fund local governments, which. spend the funds they collect for various purposes. Those services may or may not provide a specific benefit to the taxpayer, but either way the tax payment is not “given, for a good or service.”
Article X, section 1, of the Minnesota Constitution provides: “Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes.” Minn. Const, art. X, § 1 (emphasis added). Taxes are collected to support the public, not necessarily to provide services for the person taxed. Thus, a landowner’s claim that he did not get his “money’s worth” from his property taxes would not be cognizable in the courts. Instead, under our system of property taxation, all real property in Minnesota is taxable except property exempt from taxation by law. Minn.Stat. § 272.01, subd. 1 (2014). Each local jurisdiction determines the revenue needed from property taxes to meet its budget. This amount—the levy— is equal to the total proposed budget less other sources of revenue. The levy is then spread among all taxable properties according to their tax capacity (which in turn is calculated by multiplying the taxable market value by the state-mandated classification rate), and then reduced by applicable credits. See Minn, Dep’t of Revenue, Understanding Property Taxes: Property Tax Fact Sheet. 12a (2011), http://www. revenue.state.mn.us/propertytax/fact sheets/factsheet_12a.pdf. A landowner’s property tax burden does not depend on the level of services the landowner receives, or the level of services the land receives; rather, it depends (roughly) on the level of services the local jurisdiction provides to all its citizens.[8] In other words, “[gjovernment spending and revenues will affect [a landowner’s] tax bill the most,” id. at 1, not the “goods or services” the landowner receives.
In short, local governments use property taxes to pay for services that they provide; taxpayers do not “give” tax payments for services, except in the most abstract way as a part of the social compact. Local governments provide many benefits to our citizens, and to do so they must be funded. Nevertheless, I am certain the Legislature did not intend to include a landowner’s required contribution to that funding as payment for “goods or services received in the past.”[9]
For these reasons, I respectfully dissent.

. The situation might be different for special assessments, which are authorized under our constitution "for local improvements upon property benefited thereby," Minn. Const, art. X, § 1, and which, to be valid, must convey a “special benefit” on the property assessed that actually increases the property’s market value. See, e.g., Carlson-Lang Realty Co. v. City of Windom, 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976). But the past-due property taxes appellant purported . to pay with the check at issue in this case did not include any amounts for special assessments.

. In addition to her statutory argument, appellant also contends that her prosecution violates the Minnesota Constitution. See ;Minn. Const, art. I, § 12 (“No person shall be imprisoned for debt_”). Because the district court has not yet addressed this issue, I do not reach it.